■ In the Matter of the Acquisition of Real Property by the VILLAGE OF JOHNSON CITY, Respondent. WALDO'S, INC., Appellant. [626 NYS2d 869] —Yesawich Jr., J. Appeal from a judgment of the Supreme Court (Monserrate, J.), entered April 5, 1994 in Broome County, which, in a proceeding pursuant to EDPL article 5, determined the compensation due claimant as a result of petitioner's acquisition of real property.

At issue is the value of real property, owned by claimant, that was condemned by petitioner for the purpose of widening Harry L. Drive, a main thoroughfare in the Village of Johnson City, Broome County, and constructing a four-way intersection providing access to Oakdale Mall and a "superstore" owned by Wegmans Enterprises, Inc. (hereinafter Wegmans) *(see, Matter of Waldo's, Inc. v Village of Johnson City,* 141 AD2d 194, *affd* 74 NY2d 718). The subject property, 1.228 acres in size, has 536 feet of frontage on the south side of Harry L. Drive, and is situated directly north of an approximately 15-acre parcel on which the Wegmans store is located; Wegmans obtained its property in 1985. Claimant—the principals of which are also the owners of several grocery stores in the area—purchased the larger portion of the subject property (0.902 acres) for $185,000 in 1983, and the smaller portion (two parcels formerly owned by John Hromalik, comprising 0.328 acres), for $750,000 in 1986. The latter acquisition was made after Wegmans, which had initiated negotiations with Hromalik and considered various counteroffers, offered $600,-000 for the two parcels. Wegmans thereafter approached claimant seeking to purchase the subject property, but was told that it was "not for sale".

Meanwhile, petitioner was considering options for improving the traffic flow in the area, which had increased significantly since construction of Oakdale Mall and was predicted to increase further with the opening of the new Wegmans store. Ultimately, it was determined that the best solution would be to widen the road and construct a new, four-way intersection that would provide access to Wegmans and the

mall, a project necessitating the condemnation of the subject property. That was accomplished on November 25, 1988.

Petitioner determined that $429,801 would be just compensation for the property taken. Respondent sought an award of $1.8 million, arguing, *inter alia,* that the property's value is substantially enhanced because it is a "key parcel" in the Wegmans assemblage. Following a bench trial, Supreme Court refused to adopt claimant's "key parcel" theory and awarded claimant $444,675. This appeal ensued.

It was not error for Supreme Court to rely, as it did, on a common comparable sale employed by both appraisers to arrive at a fair value of the property for stand-alone commercial use. The use of a single comparable sale that has been considered by both appraisers can be a satisfactory means of reconciling otherwise divergent valuations *(see, Matter of County of Broome [Miller Facilities Corp.],* 133 AD2d 984, 985; *Buisch v State of New York,* 98 AD2d 967). Nor can the court be faulted for concluding that assertedly comparable sales consummated after the date of condemnation were not truly comparable, particularly in view of testimony that the highway improvements had a beneficial impact on property values in the area, or for rejecting the prior sale of the subject property for $935,000 as having been influenced by factors peculiar to the purchaser—namely, the competitive advantage claimant gained by thwarting or delaying Wegmans' plans— and not reflective of the market in general *(see, Gold-Mark 35 Assocs. v State of New York,* 210 AD2d 377, 378-379; *see also,* 4 Nichols, Eminent Domain § 12.04 [2]).

Moreover, even accepting claimant's thesis, that it is valid to consider a premium that might be reasonably exacted for property when its acquisition is truly critical to the success of a development scheme *(but see,* 1 Orgel, Valuation Under Eminent Domain § 23, at 102-105), the evidence here is that acquisition of the subject property was not, as claimant would have it, a necessary prerequisite to the implementation of Wegmans' plans for construction of a store on its 15-acre parcel. Wegmans had suitable access to the road via the 35 feet of frontage it owned, along with an additional 55-foot easement over land owned by the previous owner of the 15-acre parcel. The record fully supports Supreme Court's finding that Wegmans was ready and able to proceed with its plans even if it was unable to purchase the subject property. This fact distinguishes the instant case from the two "key parcel" examples (the Nanuet and Galleria assemblages) cited by

claimant's appraiser, and justifies the court's refusal to allow the "key parcel" increment sought by claimant.

There is merit, however, to claimant's contention that Supreme Court should not have completely disregarded evidence that the highest and best use of the property may have been to provide Wegmans with additional access to Harry L. Drive, or to enhance the visibility of its superstore from the road, simply because claimant, which viewed Wegmans as a serious threat to its business, declined to sell to a competitor (see, Matter of County of Clinton [Gagnon], 204 AD2d 898, 899; Matter of City of Albany [Brown Equip. Co.], 199 AD2d 746, 748; 4 Nichols, Eminent Domain § 12.04 [2], at 12-97, 12-98). The issue is not whether claimant was willing to sell (see, 4 Nichols, Eminent Domain § 12.02 [2], at 12-80, 12-82), but what a willing buyer would pay for the property in view of all of its reasonable uses. To arrive at that value, it is necessary to consider whether Wegmans, or any other buyer, would pay something over the value that can be justified by the parties' "fair market" appraisals, given the property's unique location and characteristics. While the price claimant paid for the Hromalik parcels ($750,000) may indeed have been abnormal, it is also clear that, in 1986, Wegmans would have paid $600,000 for those parcels alone. Inasmuch as the possibility of joinder with Wegmans' other property was plainly more than idle speculation, the impact of this potential use on the property's market value, as of the date of the taking, cannot be ignored.

Because neither appraiser considered this factor properly in arriving at the subject's market value (petitioner's expert disregarded it entirely and claimant's expert based his appraisal on the faulty assumption that the property was imperative to the fulfillment of Wegmans' plans), there is no basis in the record upon which we can determine an appropriate award. Remittal for the purpose of taking additional evidence, with respect to the amount that Wegmans would have paid to acquire the property, the likelihood of this occurring had the property been available for sale, and the resulting effect of these facts on the price the property could command in the market, and issuance of a new decision and judgment, is therefore required.

Mikoll, J. P., Mercure, Crew III and Peters, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.