[12 NE3d 1072, 989 NYS2d 642]

In the Matter of the BOARD OF MANAGERS OF FRENCH OAKS CONDOMINIUM, Respondent, v TOWN OF AMHERST et al., Appellants, and WILLIAMSVILLE CENTRAL SCHOOL DISTRICT, Intervenor-Respondent.

Argued March 24, 2014; decided May 1, 2014

**POINTS OF COUNSEL**

*Phillips Lytle LLP*, Buffalo (*Craig A. Leslie* and *Paul Morrison-Taylor* of counsel), for appellants. I. The appraisal by petitioner's appraiser should have been stricken and the petition dismissed. (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179; *Matter of East Med. Ctr., L.P. v Assessor of Town of Manlius*, 16 AD3d 1119; *Pritchard v Ontario County Indus. Dev. Agency*, 248 AD2d 974; *Matter of Niagara Mohawk Power Corp. v Town of Tonawanda Assessor*, 233 AD2d 920; *Matter of Central N.Y. Oil & Gas Co., L.L.C. [Porto Bagel, Inc.]*, 106 AD3d 1152; *Matter of Niagara Mohawk Power Corp. v Town of Bethlehem Assessor*, 225 AD2d 841; *Matter of Orange & Rockland Utils. v Williams*, 187 AD2d 595; *Matter of State of New York v Town of Thurman*, 183 AD2d 264; *Matter of 50540 Realty v Tax Commn. of City of N.Y.*, 136 AD2d 699; *Matter of Johnson v Town of Haverstraw*, 133 AD2d 86.) II. Petitioner's appraiser's capitalization rate calculation was fatally flawed, and otherwise entitled to no weight. (*Matter of John P. Burke Apts. v Swan*, 137 AD2d 321; *Matter of Continental Assur. Co. v Mayor of Inc. Vil. of Lynbrook*, 113 AD2d 795, 66 NY2d 915.)

*Amigone, Sanchez & Mattrey LLP*, Buffalo (*B. P. Oliverio* of counsel), for respondent. I. The Fourth Department was correct

when it affirmed Supreme Court and held that petitioner provided substantial evidence of a credible dispute with respect to valuation of the condominium units. (*Matter of OCG L.P. v Board of Assessment Review of the Town of Owego*, 79 AD3d 1224; *Matter of Tennessee Gas Pipeline Co. v Town of Sharon Bd. of Assessors*, 298 AD2d 758, 99 NY2d 506; *Matott v Ward*, 48 NY2d 455; *Price v New York City Hous. Auth.*, 92 NY2d 553; *Riccio v NHT Owners, LLC*, 79 AD3d 998; *Brown v Concord Nurseries, Inc.*, 53 AD3d 1067; *National Fuel Gas Supply Corp. v Goodremote*, 13 AD3d 1134; *Champlain Natl. Bank v Brignola*, 249 AD2d 656; *People v First Am. Corp.*, 76 AD3d 68, 18 NY3d 173; *Welch Foods v Town of Westfield*, 222 AD2d 1053.) II. The Fourth Department was correct when it affirmed Supreme Court and held that petitioner showed by a preponderance of the evidence that the condominium units were overassessed. (*Matter of Gordon v Town of Esopus*, 296 AD2d 812; *Matter of City of Syracuse Indus. Dev. Agency [Alterm, Inc.]*, 20 AD3d 168; *Matter of Greater N.Y. Sav. Bank v Commissioner of Fin.*, 15 AD3d 661; *Matter of Addis Co. v Srogi*, 79 AD2d 856, 53 NY2d 603; *Matter of Schoeneck v City of Syracuse*, 93 AD2d 988; *Matter of Connecticut Mut. Life Ins. Co. v Srogi*, 101 AD2d 698; *Matter of Blue Hill Plaza Assoc. v Assessor of Town of Orangetown*, 230 AD2d 846, 89 NY2d 804; *Matter of Rice v Srogi*, 70 AD2d 764; *Matter of 50540 Realty v Tax Commn. of City of N.Y.*, 136 AD2d 699.) III. The Fourth Department was correct when it affirmed Supreme Court and held adoption of the Town's net operating income and application of petitioner's capitalization rate was not error. (*Matter of Schoeneck v City of Syracuse*, 93 AD2d 988; *Matter of City of New York [Oceanview Terrace]*, 42 NY2d 948; *National Fuel Gas Supply Corp. v Goodremote*, 13 AD3d 1134; *Champlain Natl. Bank v Brignola*, 249 AD2d 656; *Onondaga Sav. Bank v Cale Dev. Co.*, 63 AD2d 415; *Matter of John P. Burke Apts. v Swan*, 137 AD2d 321; *Matter of Continental Assur. Co. v Mayor of Inc. Vil. of Lynbrook*, 113 AD2d 795, 66 NY2d 915; *Kurnick v State of New York*, 54 AD2d 1098; *Matter of Thomas v Davis*, 96 AD3d 1412, 101 AD3d 1699, 21 NY3d 860.) IV. The Town's brief ignores well established law. (*Matter of Central N.Y. Oil & Gas Co., L.L.C. [Porto Bagel, Inc.]*, 106 AD3d 1152; *Matter of Bialystock & Bloom v Gleason*, 290 AD2d 607; *Matter of Gullo v Semon*, 265 AD2d 656.)

### OPINION OF THE COURT

GRAFFEO, J.

In this tax certiorari proceeding, the issue is whether petitioner rebutted the presumption of validity that attached to

the tax assessment of its real property. Because petitioner's proof failed to provide the factual and statistical information needed to substantiate its calculations, we conclude that the presumption was not overcome. The order of the Appellate Division should therefore be reversed and the petition dismissed.

Petitioner is the board of managers of the French Oaks Condominium (the Board), a residential complex located in the Town of Amherst, New York. The development consists of 39 individual units of varying sizes and layouts, each built between 2003 and 2005. Respondent Town of Amherst assessed the aggregate property at $5,176,000 for the 2009-2010 tax year. In July 2009, the Board commenced this Real Property Tax Law (RPTL) article 7 proceeding against the Town, the Town's assessor and the Town's Board of Assessment Review (collectively, the Town) challenging the tax assessment as excessive.[1]

In support of its petition, the Board submitted an appraisal report that set the valuation of the property at $4,265,000—nearly one million dollars less than the assessment roll figure. In reaching this conclusion, the Board's appraiser applied an income capitalization method to establish the market value of the complex, treating each condominium unit as if it were an income-producing rental. Under the direct capitalization methodology, the first step required determination of the net operating income of the condominiums. The appraiser computed the net operating income by comparing the 39 units to similar apartments to estimate the market rental value of the condominiums, and then subtracted the expenses incurred in managing the condominiums. After making some upward and downward adjustments to account for the differences between the various units and the comparable apartments, the appraiser calculated the total annual net operating income at $541,754.

The next step in the capitalization of income formula is to determine the appropriate capitalization rate. This can be accomplished by taking the annual net operating income of a comparable and dividing that figure by its sale price (see Appraisal Institute, The Appraisal of Real Estate at 514 [11th ed 1996]). To make this computation, the Board's appraiser identified four purportedly comparable apartment complexes—all constructed

---

1. The Board later brought a second RPTL article 7 proceeding seeking review of the tax assessment for the 2010-2011 tax year. The parties stipulated that a referee would resolve the first proceeding and that decision would apply to the second proceeding.

between 1959 and 1978—in the vicinity of the French Oaks development. To compute the net operating income for the four comparables, the appraiser had to ascertain their gross incomes and expenses. Although the appraiser offered specific figures for these items in his report, he indicated that they were derived from what he referred to as "forecast financials." The report did not explain how the appraiser arrived at these income and expense figures and did not otherwise identify the sources for this component. The results reached after dividing the estimated net operating income of each comparable property by its sale price were four capitalization rates that ranged from 8.59% to 10.36%. The appraiser settled on a median capitalization rate of 9.5% and added a "tax factor" of 3.27% to the capitalization rate for a final capitalization rate of 12.7%.[2]

The last step in the income capitalization methodology required dividing the property's net operating income by the final capitalization rate. Once the proffered net operating income of $541,754 was divided by the final capitalization rate of 12.7%, the appraisal report set forth the conclusion that the 39-unit complex should have been assessed at approximately $4,265,000 for the 2009-2010 tax year.

The Town offered an appraisal that also utilized the income capitalization method but reached a different valuation for assessment purposes. Unlike the Board's appraiser, the Town's expert inspected the interior of each of the 39 condominium units and included detailed photographs and information in the report. He estimated the net operating income at $535,423 and computed an initial capitalization rate of 7.6%, to which he added a tax factor of 2.84% for a final capitalization rate of 10.44%. After dividing the net operating income by the capitalization rate, which resulted in an estimated value of $5,128,573, the expert deducted $49,725 in personal property items for an appraised market value of $5,080,000 (this valuation presented by the Town's expert differed only slightly from the assessed value assigned by the Town's assessor for the tax roll).[3]

A two-day hearing was conducted before a referee. Following the testimony of the Board's appraiser, which largely tracked

---

**2.** When assessed real estate taxes are presumed to be incorrect, appraisers may add a tax factor rather than deducting the assessed taxes as expenses. Here, the Board's appraiser calculated the tax factor by dividing the Town's overall tax rate ($32.68 per thousand) by 1,000.

**3.** Because the net operating incomes offered by the Board's appraisal ($541,754) and the Town's report ($535,423) were quite close, the disparity in

his appraisal report, the Town moved to dismiss the petition on the basis that the Board had failed to meet its initial burden of adducing substantial evidence to rebut the presumption that the Town's tax assessment was valid. The referee reserved decision and the Town presented its case through the testimony of its expert.

After the hearing, the referee denied the Town's dismissal motion, holding that the Board's proof rebutted the presumption of validity. Weighing the evidence presented by both parties, the referee concluded that the Board had established by a preponderance of the evidence that its property was overassessed. In reaching this determination, the referee adopted the Town's net operating income of $535,423 and its tax factor of 2.84%, but accepted the Board's initial capitalization rate of 9.5% (for a final capitalization rate of 12.3%). Dividing the net operating income of $535,423 by the final capitalization rate of 12.3%, the referee held that the complex should have been assessed at $4,353,030, significantly less than the $5,176,000 value listed on the 2009-2010 tax roll. Supreme Court thereafter directed the Town to amend its tax roll to reflect the referee's decision and remit any tax overpayments to the Board.

The Town appealed and the Appellate Division, with two Justices dissenting, affirmed (103 AD3d 1102 [4th Dept 2013]). The majority found that the taxpayer had rebutted the presumption; that its appraisal adequately complied with 22 NYCRR 202.59 (g) (2) (the applicable regulation containing the requirements for appraisal reports); and that the referee did not err in accepting the initial capitalization rate of the Board's appraiser—the only item from the Board's appraisal the referee relied upon. The dissenters would have adopted the Town's proposed value in its entirety, reasoning that the capitalization rate analysis conveyed in the Board's appraisal was entitled to no weight because its appraiser "failed to offer any factual support for the great majority of his figures" (id. at 1110 [Peradotto and Carni, JJ., dissenting]). In particular, the dissent concluded that the analysis of the Board's appraiser was deficient since he relied only on his "personal exposure" to at least three of the four comparable properties he used to calculate the capitalization rate (id. at 1109). Hence, "[i]n the absence of any documentary

---

their ultimate valuations is explained by the difference in their respective capitalization rates. Hence, the merit of the Board's argument was based in large part on the persuasiveness of the capitalization rate proposed by its appraiser.

or tangible evidence, respondents' counsel could not determine whether petitioner's appraiser accurately reported the financial figures of the allegedly comparable properties, nor can we make such a determination" (*id.* at 1110).

The Town appealed as of right under CPLR 5601 (a) based on the two-Justice dissent. We subsequently denied the Board's motion to dismiss the appeal predicated on its claim that the double dissent was not on a question of law (21 NY3d 956 [2013]).

Before us, the Town maintains that the Board failed to rebut the presumption that the tax assessment was accurate and the petition should have been dismissed. The Town asserts that the Board's appraisal should have been disregarded because it did not substantially comport with the dictates of 22 NYCRR 202.59 (g) (2) in that it failed to adequately disclose the factual underpinnings and sources that justified the appraiser's calculations. The Town contends that the Board did not furnish essential information pertaining to each of the 39 units, as well as the comparable apartments, so that the adjustments made to estimate the complex's market rental value under step one of the direct capitalization methodology were inadequate for review. Likewise, the Town urges that the Board's appraiser did not include sufficient documentary proof or data supporting the figures related to the four comparable properties from which the appraiser derived his capitalization rate under step two of the formula. In response, the Board asks us to affirm the reduction of its tax assessment, contending that the Appellate Division majority correctly concluded that its appraiser supplied sufficient facts regarding the condominium units and the comparable rental properties relevant to the first step and an adequate explanation for the computation of the capitalization rate under the second step.[4]

In an RPTL article 7 tax certiorari proceeding, "a rebuttable presumption of validity attaches to the valuation of property made by the taxing authority" (*Matter of Roth v City of Syracuse*, 21 NY3d 411, 417 [2013]). Consequently, a taxpayer

---

4. The Board further suggests that we cannot review the threshold issue of whether it rebutted the presumption through substantial evidence because the two-Justice dissent at the Appellate Division was not predicated on this issue. It is well settled, however, that once an appeal lies as of right under CPLR 5601 (a), an appellant may, on the ensuing appeal, seek review of all questions properly raised below (*see Matter of Duchnowski*, 31 NY2d 991 [1973]). The issue is therefore properly before us.

challenging the accuracy of an assessment bears the initial burden of coming forward with substantial evidence that the property was overvalued by the assessor. In the context of tax assessment cases, we have explained that the substantial evidence standard requires the taxpayer to "demonstrate the existence of a valid and credible dispute regarding valuation" (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179, 188 [1998]). If the taxpayer satisfies this threshold burden, the presumption disappears and the court "must weigh the entire record, including evidence of claimed deficiencies in the assessment, to determine whether petitioner has established by a preponderance of the evidence that its property has been overvalued" (*id.*). But where a taxpayer fails to rebut the presumption, the municipality's assessor has no obligation to go "forward with proof of the correctness of [its] valuation," and the petition is to be dismissed (*id.* at 187 [internal quotation marks and citation omitted]).

A taxpayer will most often attempt to meet the substantial evidence requirement by offering a "detailed, competent appraisal based on standard, accepted appraisal techniques and prepared by a qualified appraiser" (*Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d 192, 196 [1998]). The Uniform Rules for the New York State Trial Courts prescribe the basic requirements for written appraisals:

> "The appraisal reports shall contain a statement of the method of appraisal relied on and the conclusions as to value reached by the expert, together with the facts, figures and calculations by which the conclusions were reached. If sales, leases or other transactions involving comparable properties are to be relied on, they shall be set forth with sufficient particularity as to permit the transaction to be readily identified, and the report shall contain a clear and concise statement of every fact that a party will seek to prove in relation to those comparable properties. The appraisal reports also may contain photographs of the property under review and of any comparable property that specifically is

relied upon by the appraiser, unless the court otherwise directs" (22 NYCRR 202.59 [g] [2]).[5]

Although we have not previously had occasion to analyze this regulation, Appellate Division case law is instructive. Courts construing this provision have held that an appraisal should be disregarded when a party violates section 202.59 (g) (2) by failing to adequately "set forth the facts, figures and calculations supporting the appraiser's conclusions" (*Pritchard v Ontario County Indus. Dev. Agency*, 248 AD2d 974, 974 [4th Dept 1998]; *see also Matter of Thomas v Davis*, 96 AD3d 1412, 1414 [4th Dept 2012]; *Matter of Johnson v Kelly*, 45 AD3d 687, 687 [2d Dept 2007]; *Matter of State of New York v Town of Thurman*, 183 AD2d 264, 268-269 [3d Dept 1992]). The reasonableness of this rule is obvious since noncompliance with 22 NYCRR 202.59 (g) (2) frustrates the primary objectives of these requirements—to afford "opposing counsel the opportunity to effectively prepare for cross-examination" (*Matter of Gullo v Semon*, 265 AD2d 656, 657 [3d Dept 1999]) and to enable the courts to undertake meaningful review of appraisals. With these principles in mind, we examine the adequacy of the Board's proof at the hearing.

Putting aside the other claimed inadequacies identified by the Town, we focus on the step-two capitalization rate analysis provided by the Board's appraiser, which was critical to the outcome of this case and the only figure submitted by the taxpayer that was adopted by the referee. The appraisal identified four comparable apartment complexes used to calculate the capitalization rate, setting forth the sale price, gross income, expenses and net operating income for each of the rental properties (*see* Appraisal Institute, The Appraisal of Real Estate at 514 [11th ed] ["Deriving capitalization rates from comparable sales is the preferred technique when sufficient data on sales of similar, competitive properties are available"]). Since net operating income is one half of the equation in determining the capitalization rate (net operating income divided by sales price), an accurate calculation is of paramount importance. But other

5. 22 NYCRR 202.59 applies to tax assessment review proceedings outside the City of New York. 22 NYCRR 202.60, applicable to tax certiorari proceedings brought in the counties within the City of New York, contains a provision with similar operative language (*see* 22 NYCRR 202.60 [g] [3]). The only distinction is that 22 NYCRR 202.60 (g) (3) generally requires appraisal reports to include photographs of the assessed property and any comparable properties, whereas 22 NYCRR 202.59 (g) (2) merely permits such photographs.

than referencing "forecast financials," the appraiser did not provide the sources of the income or expense figures related to each comparable (*see id.* ["Data on each property's sale price, income, expenses, financing terms, and market conditions at the time of sale are needed"]).

More importantly, the hearing testimony of the Board's appraiser revealed that he had little to no confirmable data to support the income and expense numbers he employed to derive the capitalization rate. During his direct examination, the appraiser asserted that he relied on "very good" and "very strong" data that came from "certified sources." On cross-examination, however, he conceded that he had no certified expense or income information and instead had relied on "forecasted economic indicators" with respect to the apartment buildings. In fact, he could identify only two documents in the record that provided any "limited historic operating expenses," and this information was for only two comparables and did not correlate to the numbers used in the appraisal report. He admitted that he had no documents supporting his analysis as to the other two comparable properties. When pressed, he proffered that the relevant figures were based on his "personal exposure" to the complexes, i.e., his own unverifiable knowledge.[6] But as the Appellate Division dissenters aptly recognized, "[a]n appraiser cannot simply list financial figures of comparable properties in his or her appraisal report that are derived from alleged personal knowledge; he or she must subsequently 'prove' those figures to be facts at trial" (103 AD3d at 1110 [Peradotto and Carni, JJ., dissenting]). Simply put, the record before us affords no basis to check or test whether the net operating incomes for these four properties—and the capitalization rates adduced from them—were valid, or even in the ballpark.

In sum, although the substantial evidence standard is not a heavy one, "the documentary and testimonial evidence proffered by petitioner [must be] based on sound theory and objective data" (*Matter of FMC Corp.*, 92 NY2d at 188 [internal quotation marks and citation omitted]). The Board in this case failed to meet this threshold because its appraiser did not support the proposed capitalization rate with objective data necessary to substantiate the component calculations. As a result of

---

**6.** The Board's appraiser also acknowledged that there were more recent sales of three of the four comparable properties that he did not consider in his analysis.

this deficiency in proof, the Board did not rebut the presumption that the tax assessment of $5,176,000 was valid.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.

Chief Judge LIPPMAN and Judges READ, SMITH, RIVERA and ABDUS-SALAAM concur; Judge PIGOTT taking no part.

Order reversed, with costs, and petition dismissed.