◼ In the Matter of CENTER ALBANY ASSOCIATES LP, Respondent, et al., Petitioners, v BOARD OF ASSESSMENT REVIEW OF THE CITY OF TROY et al., Appellants. [58 NYS3d 669]—

Garry, J.P. Appeals (1) from an order and judgment of the Supreme Court (Zwack, J.), entered May 9, 2016 in Rensselaer

County, which granted petitioners' application, in a proceeding pursuant to RPTL article 7, to reduce the 2013 tax assessment on certain real property owned by petitioner Center Albany Associates LP, and (2) from the amended judgment entered thereon.

Petitioner Center Albany Associates LP (hereinafter petitioner) owns two large apartment complexes—Troy Gardens and Park Ridge—located in the City of Troy, Rensselaer County. In July 2013, petitioners commenced this proceeding pursuant to RPTL article 7 challenging, as pertinent here, respondents' 2013 tax assessment of Troy Gardens at $7,975,000 and Park Ridge at $11,100,000.[1] At the nonjury trial, petitioner presented the testimony and report of its expert appraiser opining that the market value of Troy Gardens as of the valuation date of July 1, 2012 and taxable status date of March 1, 2013 was $5,800,000 and the market value of Park Ridge was $8,100,000. Respondents offered a competing report and expert testimony valuing Troy Gardens at $8,085,000 and Park Ridge at $10,750,000. Following the trial, Supreme Court accorded no weight to the valuations of respondents' expert, adopted the valuations of petitioner's expert, and reduced the 2013 assessment on the properties by a total of $5,175,000. Respondents appeal.

It is undisputed that petitioner met its initial burden to rebut the presumptive validity of the values placed on the properties by respondent Assessor of the City of Troy by "demonstrat[ing] the existence of a valid and credible dispute regarding valuation" (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179, 188 [1998]; *accord Matter of Board of Mgrs. of French Oaks Condominium v Town of Amherst*, 23 NY3d 168, 175 [2014]). This Court must therefore "weigh the entire record and review the trial court's finding to determine whether it is supported by or against the weight of the evidence" (*Matter of Adirondack Mtn. Reserve v Board of Assessors of the Town of N. Hudson*, 106 AD3d 1232, 1237 [2013] [internal quotation marks and citations omitted]; *see Matter of Corvetti v Winchell*, 75 AD3d 1013, 1014 [2010], *lv denied* 16 NY3d 701 [2011]).

The record reveals that Troy Gardens was constructed in the 1950s and consists of 191 apartments in two- and three-story buildings located on 12 acres of land. Park Ridge, which was built in two phases in the 1960s and 1970s, includes 257 apartments in two- and three-story buildings on 17 acres. The par-

---

1. The petition also challenged the assessments of three parcels owned by the other petitioners, but those petitioners elected not to pursue their claims at trial.

ties' experts agreed that the properties were exceptionally well operated and well maintained. They further agreed that the properties were income-producing, and both accordingly used the income capitalization method of appraisal, which is "recognized to be the best indicator of value with respect to income-producing property" (*Matter of George A. Donaldson & Sons, Inc. v Assessor of the Town of Santa Clara*, 135 AD3d 1138, 1141 [2016], *lv denied* 27 NY3d 906 [2016]). Both experts also employed the sales comparison approach as a secondary check on their income valuations. They differed, however, in the methods that they used to determine the properties' effective gross income and operational expenses, in particular in their estimates of vacancy and collection loss, the resulting effective gross income and operating expenses. Supreme Court determined that the methods used by petitioner's expert were more reliable and more thoroughly supported by record evidence of the properties' actual income and operating expenses and those of comparable properties.

As to effective gross income, petitioner's expert testified that he calculated these figures based upon the market rents and actual rents set forth in the properties' rent rolls.[2] He concluded that these figures were reasonable by comparing them to those of similar properties in the City of Troy, finding that Troy Gardens' rents were at or above those of similar properties— likely because heat is included in that complex's rent—while the rents at Park Ridge were within the same range as the comparable properties. The expert then determined the percentage of difference between the properties' market rents and actual rents and calculated an estimated vacancy and income loss of 10% for Troy Gardens and 12% for Park Ridge. These percentages were based upon the properties' actual and historical vacancy rates and upon estimated collection loss consisting of income losses from sources such as rent nonpayment and the "lag" between market rents and those actually charged. Applying these percentages to the properties' market rents, and taking into account additional income from such sources as laundry and fees, petitioner's expert thus calculated the estimated effective gross income for each of the properties. He then determined the properties' projected operating expenses, subtracted that figure from each property's effective gross income and applied a combined capitalization and tax rate of 12.66% for each to arrive at his ultimate valuations.

---

**2.** According to petitioner's expert, market rent represents the current asking rent that would be charged if every apartment were rented to a new tenant on the taxable status date; actual rent represents the rents actually being charged under the leases then in effect.

Respondents' expert likewise began his calculation of effective gross income by comparing the amounts identified as market rent in the properties' rent rolls to those in effect at comparable properties. However, based upon the comparable properties' size, amenities, condition and other pertinent information, he rejected the properties' stated market rents and instead calculated estimated market rents that were higher than those stated in the rent rolls. In most circumstances, "actual income is the best indicator of value" (*Matter of Conifer Baldwinsville Assoc. v Town of Van Buren*, 115 AD2d 325, 325 [1985], *affd* 68 NY2d 783 [1986]; *accord Matter of Village Sq. of Penna, Inc. v Board of Assessment Review of the Town of Colonie*, 123 AD3d 1402, 1404 [2014], *lv denied* 25 NY3d 903 [2015]). When there is evidence that a property's actual income does not reflect fair market value, it may be disregarded (*see e.g. Matter of John P. Burke Apts. v Swan*, 137 AD2d 321, 326 [1988]). Here, however, petitioner's expert testified that the properties' market rents were at or above market value, and respondents offered no contradictory proof; indeed, their expert's appraisal report stated that the properties' rents were "at market levels." Accordingly, Supreme Court did not err in accepting the opinion of petitioner's expert as to market rental rates rather than those of respondents' expert (*see Matter of Techniplex III v Town & Vil. of E. Rochester*, 125 AD3d 1412, 1413-1414 [2015]; *Matter of Troy Realty Assoc. v Board of Assessors of City of Troy*, 227 AD2d 813, 814 [1996]).

Respondents' expert testified that he estimated a vacancy rate of 4% for both properties, which included estimates for physical vacancy and for credit loss resulting from nonpayment.[3] In so doing, unlike petitioner's expert, he did not rely upon the properties' actual vacancy rates, but instead based his estimate solely upon published surveys of Capital Region vacancy rates. The expert acknowledged that these surveys included markets outside of the City of Troy, and that neither the surveys nor his report included supporting proof such as operating data about comparable properties that, as petitioner argues, would have provided a basis for cross-examination (*see Matter of Board of Mgrs. of French Oaks Condominium v Town of Amherst*, 23 NY3d at 176; 22 NYCRR 202.59 [g] [2]). His credit loss estimate, likewise, was not based upon the properties' actual data pertaining to rent nonpayment; instead, he

---

**3.** As petitioner notes, respondents' estimated 4% figure, comprised both of physical vacancy and credit loss, was lower than the properties' actual rates for physical vacancy alone—5.8% for Troy Gardens, and 8.2% for Park Ridge.

determined the number of tenants who had long-term leases and, therefore, in his opinion, likely paid their rent regularly, and then estimated that 1% to 2% of the remaining tenants likely did not do so.

Turning to operating expenses, petitioner's expert based his estimate of this figure on the properties' actual expenditures during the previous three years for maintenance, insurance, payroll, utilities and the like, and determined their reasonableness by comparing several line items to those of similar properties. He opined that the figures were reliable because, among other things, they were consistent historically and were supported by the properties' age, overall condition and history of exceptionally good maintenance. In contrast, respondents' expert rejected the properties' actual operating expenses, finding them to be inordinately high and possibly distorted by cross-over resulting from certain expenses, such as landscaping and maintenance, that were shared between the properties.[4] He applied an expense ratio of 45% to both properties based upon industry surveys of expense ratios for comparable properties and, in particular, upon a survey by the Institute of Real Estate Management of the National Association of Realtors (hereinafter IREM). The expert acknowledged that the IREM survey was based upon information from unidentified properties in several states, not necessarily including properties in the City of Troy, and that the survey was not supported by specific operating information for any comparable property within the local area. Finally, he acknowledged that the IREM publication contained cautionary language expressly warning that the data it contained was not intended to be used to determine ideal operating ratios.

Supreme Court found that the rejection of the properties' actual expense data by respondents' expert was not substantiated by record evidence, and that his estimated expense ratio was unsupported by specific data pertaining to operating expense ratios in comparable properties. Upon review, we find no reason to disturb these conclusions (compare *Matter of Niagara Mohawk Power Corp. v Town of Bethlehem Assessor*, 225 AD2d 841, 845 [1996]; *Matter of Orange & Rockland Utils. v Williams*, 187 AD2d 595, 596 [1992]). "Where, as here, conflicting expert evidence is presented, we defer to the trial court's resolution of credibility issues" (*Matter of Lowe's Home Ctrs., Inc. v Board of Assessment Review and/or Dept. of Assessment Review of Tompkins County*, 106 AD3d 1306, 1307 [2013]; ac-

---

4. Petitioner's expert testified that he considered the properties' accounting records of shared expenses and found them to be appropriately prorated.

cord *Matter of Village Sq. of Penna, Inc. v Board of Assessment Review of the Town of Colonie*, 123 AD3d at 1404). Considering the record as a whole, we find no error in Supreme Court's credibility determinations according no weight to respondents' appraisal and adopting the valuations set forth by petitioner.

Egan Jr., Lynch, Clark and Aarons, JJ., concur. Ordered that the order and judgment and amended judgment are affirmed, without costs.