Matter of Champlain Ctr. N. LLC v Town of Plattsburgh (2018 NY Slip Op 07021)





Matter of Champlain Ctr. N. LLC v Town of Plattsburgh


2018 NY Slip Op 07021


Decided on October 18, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 18, 2018

525842

[*1]In the Matter of CHAMPLAIN CENTRE NORTH LLC, Respondent- Appellant,
v
TOWN OF PLATTSBURGH et al., Appellants- Respondents. (And Two Other Related Proceedings.)

Calendar Date: September 11, 2018

Before: Garry, P.J., Clark, Mulvey, Rumsey and Pritzker, JJ.


The Vincelette Law Firm, Albany (Daniel G. Vincelette of counsel), for Town of Plattsburgh, appellant-respondent.
Ferrara Fiorenza PC, East Syracuse (Katherine E. Gavett of counsel), for Beekmantown Central School District, appellant-respondent.
Phillips Lytle LLP, Buffalo (Craig A. Leslie of counsel), for respondent-appellant.



MEMORANDUM AND ORDER
Rumsey, J.
(1) Cross appeals from orders and judgments of the Supreme Court (Muller, J.), entered May 30, 2017 in Clinton County, which, in two proceedings pursuant to RPTL article 7, among other things, denied petitioner's motion to preclude respondents' appraisal report and denied a motion by respondent Beekmantown Central School District to dismiss the petition in proceeding No. 2, (2) appeals from two orders of said court, entered May 30, 2017 in Clinton County, which granted petitioner's applications, in two proceedings pursuant to RPTL article 7, to reduce the 2015 and 2016 tax assessments on certain real property owned by petitioner, and (3) appeals from the judgments entered thereon.
Petitioner owns an enclosed shopping mall in the Town of Plattsburgh, Clinton County containing 477,954 square feet of retail space that is located on 75.5 acres of land. The property was assessed by respondent Town of Plattsburgh at $49,400,000 for both the 2015 and 2016 tax years. Petitioner commenced two RPTL article 7 proceedings to challenge those assessments. Respondent Beekmantown Central School District (hereinafter BCSD) moved to dismiss the 2016 proceeding based on petitioner's failure to timely send it copies of the notice of petition and petition by mail, as required by RPTL 708 (3). Petitioner moved to preclude admission of respondents' appraisal report. Supreme Court reserved decision on these motions and held a nonjury trial in October 2016 at which the parties submitted proof regarding valuation of the property. Petitioner's appraiser, Kenneth Gardner, utilized the income capitalization method and [*2]valued the property at $27,912,000 for the 2015 tax year and $24,483,000 for the 2016 tax year. Respondents' appraiser, Stephen Clark, also utilized the income capitalization method and valued the property at $45,700,00 for both tax years. Petitioner then commenced a hybrid CPLR article 78 and RPTL article 7 petition challenging the valuation of the property, which the Town moved to dismiss.
By orders and judgments entered in May 2017, Supreme Court denied BCSD's motion to dismiss the 2016 proceeding, granted the Town's motion to dismiss the hybrid proceeding and denied petitioner's motion to preclude respondents' appraisal report. Respondents appealed and petitioner cross-appealed from these orders and judgments. By separate orders entered in May 2017, Supreme Court granted petitioners' applications to reduce the tax assessments for 2015 and 2016 to the values determined by Gardner. The Town and BCSD appeal from these orders, as well as the orders and judgments entered thereon in June 2017.[FN1]
We first consider whether Supreme Court properly denied BCSD's motion to dismiss the 2016 proceeding. RPTL 708 (3) requires that copies of the notice of petition and petition be mailed "to the superintendent of schools of any school district within which any part of the real property on which the assessment to be reviewed is located" within 10 days of service on the assessing unit, and provides that "[f]ailure to comply with the provisions of this section shall result in the dismissal of the petition, unless excused for good cause shown." Petitioner failed to establish good cause for its failure to provide BCSD with timely notice. Upon commencement of the 2016 proceeding, the Town was promptly served and, approximately one week later (on July 28, 2016), copies of the notice of petition and petition were mailed to the wrong school district due to law office failure [FN2]. Petitioner was aware that BCSD was the proper school district because it had participated in litigation of the 2015 proceeding, and law office failure does not constitute "good cause shown" for which noncompliance with RPTL 708 (3) may be excused (RPTL 708 [3]; see Matter of Highbridge Dev. BR, LLC v Assessor of the Town of Niskayuna, 121 AD3d 1324, 1325 [2014]). Moreover, absent a showing of good cause, the lack of prejudice to BCSD does not excuse petitioner's failure to comply with RPTL 708 (3) (see Matter of Highbridge Dev. BR, LLC v Assessor of the Town of Niskayuna, 121 AD3d at 1325).
Nonetheless, we conclude that Supreme Court properly denied BCSD's motion to dismiss the 2016 proceeding. The defense that notice was not properly given in accordance with RPTL 708 (3) is waived where a party informally appears by substantially participating in the proceeding before seeking dismissal (see e.g. Matter of Sessa v Board of Assessors of Town of N. Elba, 46 AD3d 1163, 1164-1165 [2007]). BCSD participated in the 2016 proceeding before it answered or moved to dismiss. BCSD's counsel was admittedly aware of petitioner's request that the assessed value of the property for both the 2015 and 2016 tax years be determined at the trial scheduled to commence in October 2016. Further, BCSD's counsel participated in a court conference on July 21, 2016, during which petitioner's counsel represented that the 2016 proceeding had been commenced, BCSD's counsel joined with the Town's counsel to request an extension of time to file an appraisal report, which included a valuation for the 2016 tax year, and counsel for all parties — including BCSD — agreed to try both proceedings in October 2016. That same day, petitioner's counsel sent a letter to counsel for both respondents confirming that the 2016 proceeding had been commenced on July 19, 2016. On August 3, 2016, the court was advised that "respondents" had filed a 2016 appraisal. On August 17, 2016, counsel for BCSD [*3]sent a letter to petitioner's counsel objecting to petitioner's filing of a trial note of issue for the 2016 proceeding. Such acts, taken with knowledge of the proceeding and without objection to the timeliness of the notice that had been provided, constituted an informal appearance that was sufficient to waive any objection to the late notice (see id. at 1166).[FN3]
With regard to Supreme Court's reduction of the 2015 and 2016 tax assessments, we conclude that petitioner met its initial burden of rebutting the presumptive validity of the tax assessments by submitting the detailed appraisal of Gardner, an experienced, certified appraiser who utilized an accepted method of valuation and adequately set forth his calculations and the data upon which his conclusions were based (see Matter of Center Albany Assoc. LP v Board of Assessment Review of the City of Troy, 151 AD3d 1420, 1421 [2017]; Matter of Home Depot U.S.A. Inc. v Assessor of the Town of Queensbury, 129 AD3d 1427, 1428 [2015], lv denied 26 NY3d 915 [2016]; Matter of Highbridge Dev. BR, LLC v Assessor of the Town of Niskayuna, 121 AD3d at 1325-1326). Thus, we must " weigh the entire record and review [Supreme Court's] finding to determine whether it is supported by or against the weight of the evidence" (Matter of Center Albany Assoc. LP v Board of Assessment Review of the City of Troy, 151 AD3d at 1421 [internal quotation marks and citations omitted]). Further, we defer to Supreme Court's resolution of credibility issues where conflicting expert testimony is presented (see id. at 1424; Matter of Village Sq. of Penna, Inc. v Board of Assessment Review of the Town of Colonie, 123 AD3d 1402, 1404 [2014], lv denied 25 NY3d 903 [2015]).
The parties' experts both valued the property — an enclosed retail shopping mall — utilizing the income capitalization approach, "which is recognized to be the best indicator of value with respect to income-producing property" (Matter of Center Albany Assoc. LP v Board of Assessment Review of the City of Troy, 151 AD3d at 1422 [internal quotation marks and citation omitted]). The experts differed substantially, however, in the methods that they used to determine the property's gross income and operational expenses. Gardner, petitioner's appraisal expert, testified that he estimated the future net income that could be realized by a purchaser of the property. To accomplish this, he reviewed historical operations data for the property that demonstrated substantial declines in retail sales and corresponding increases in the vacancy rates, which he testified were consistent with industry trends. He further testified that the trend of declining sales in the traditional retail sector has resulted in lower base rents, higher vacancy rates and extensive tenant concessions. Gardner further noted that the retail sales of one of the larger, anchor stores — which occupied 17.9% of the leasable area of the mall — had declined to a level by 2014 that suggested there was a substantial risk that it would close [FN4]. Based upon experience at similar properties, Gardner opined that it would be extremely difficult for petitioner to find tenants to occupy all of the space that would be vacated upon closure of the anchor store and, further, that if potential tenants were located, substantial tenant concessions would likely be required to lease the space.
Based on this information, Gardner concluded that the property's actual income did not accurately reflect its future income or, therefore, its fair market value. A property's actual income may be disregarded where there is such evidence that it does not accurately reflect fair market value (see id. at 1423). To account for declining retail sales, Gardner estimated future gross rental income for each category of tenant by multiplying projected sales by an occupancy cost ratio, which represents the total occupancy costs — including base rent and additional costs such as real estate taxes and common area charges — that tenants are willing to pay as a percentage of their retail sales. Contrary to respondents' contention, this is a recognized appraisal method (see Matter of Sangertown Sq., L.L.C. v Assessor of Town of New Hartford, 118 AD3d 1344, 1344-[*4]1345 [2014], citing W.T. Grant Co. v Srogi, 52 NY2d 496, 508-511 [1981], lv denied 24 NY3d 907 [2014]). Gardner's estimated expenses properly included expenses for tenant concessions — amounts necessary to entice tenants to lease property, such as paying store build-out expenses — to the extent that they were to be incurred by the landlord (cf. Matter of VGR Assoc., LLC v Assessor, Bd. of Assessment Review of Town of New Windsor, 51 AD3d 678, 679-680 [2008] [expenses paid by a tenant under a net lease are not properly included as expenses for purposes of the income capitalization appraisal method]).[FN5]
We further find, contrary to the Town's contentions, that Gardner's appraisal report contains an adequate factual basis for the capitalization rate that he employed in his analysis. Although Gardner's selection of the appropriate capitalization rate was based, in part, on his personal experience and knowledge, the appraisal report contains adequate data regarding capitalization rates utilized in the industry for similar properties (see Matter of George A. Donaldson & Sons, Inc. v Assessor of the Town of Santa Clara, 135 AD3d 1138, 1142 [2016], lv denied 27 NY3d 906 [2016]).
Supreme Court found the estimates of future income expenses made by Clark, respondents' appraisal expert, to be less credible. The court specifically noted that Clark failed to account for declining occupancy rates and income, or the likely loss of a major anchor tenant. The court further noted that Clark overestimated effective gross income by utilizing the total payments that petitioner received from tenants in 2015 as a basis for projecting future income, despite admitting that gross income peaked in 2015 and was approximately $337,000 higher than the average annual receipts during the six-year period from 2010-2016. Supreme Court also found that Clark failed to properly account for tenant reimbursements for real estate taxes and common area charges, and disregarded necessary expenses incurred by petitioner to attract and retain tenants and to maintain the property. Thus, we conclude that Supreme Court had an ample basis for finding Gardner's analysis more credible and in adopting the valuations proposed by him.
However, Supreme Court erred when it valued the property below the amount that petitioner requested in the petitions. As relevant here, "an assessment may not be ordered reduced to an amount less than that requested by the petitioner in a petition or any amended petition" (RPTL 720 [1] [b]; see Matter of Village Sq. of Penna, Inc. v Board of Assessment Review of the Town of Colonie, 123 AD3d at 1405-1406). In its RPTL article 7 petitions, petitioner sought to reduce the 2015 assessed value of the property to only $28 million and the 2016 assessed value to only $25 million. As Supreme Court assessed the property for the 2015 tax year at $27,912,000 and for the 2016 tax year at $24,483,000, the orders and judgments must be modified, accordingly. Respondents' remaining contentions have been considered and found to lack merit.[FN6]
Garry, P.J., Clark, Mulvey and Pritzker, JJ., concur.
ORDERED that appeals and cross appeals from the orders and judgments entered May 30, 2017 deciding the respective motions are dismissed, without costs.
ORDERED that the orders entered May 30, 2017 and the orders and judgments entered June 21, 2017 are modified, on the law, without costs, by increasing petitioner's tax assessments on the subject property to $28,000,000 for the 2015 tax year and $25,000,000 for the 2016 tax year, and, as so modified, affirmed.



Footnotes

Footnote 1: Respondents' appeals and petitioner's cross appeals from the nonfinal orders and judgments entered in May 2017 — which decided the parties' respective motions — must be dismissed as "the right to appeal from a nonfinal order terminates upon entry of a final judgment" (Augusta v Kwortnik, 161 AD3d 1401, 1403 [2018] [internal quotation marks and citations omitted]). The issues raised therein are before us upon the appeals from the final orders and final orders and judgments entered May 30, 2017 and June 21, 2017, respectively (id.).

Footnote 2: Copies were mailed to BCSD on August 8, 2016 — more than 10 days after the Town was served.

Footnote 3: In light of our determination that Supreme Court properly denied BCSD's motion to dismiss the 2016 proceeding, we need not consider petitioner's argument regarding Supreme Court's dismissal of the hybrid proceeding.

Footnote 4: Clark, respondents' appraiser, admitted that, as of the relevant valuation dates, "it was a given" that the store would close, and, it did, in fact, subsequently close.

Footnote 5: We find no error in Gardner excluding from gross income payments that petitioner received from an adjacent Target store for common area maintenance because he did not include the associated expenses.

Footnote 6: In light of our determination that Supreme Court did not err by adopting the valuations of petitioner's appraiser, we need not consider petitioner's contention that the court erred in denying its motion to preclude respondents' appraisal report.