Matter of City of Albany Indus. Dev. Agency. PSC, LLC (City of Albany Indus. Dev. Agency) (2026 NY Slip Op 00947)

Matter of City of Albany Indus. Dev. Agency. PSC, LLC (City of Albany Indus. Dev. Agency)

2026 NY Slip Op 00947

Decided on February 19, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 19, 2026

CV-24-1154
[*1]In the Matter of the Acquisition of Real Property by the City of Albany Industrial Development Agency. PSC, LLC, Respondent; City of Albany Industrial Development Agency, Appellant.

Calendar Date:January 13, 2026

Before:Aarons, J.P., Pritzker, Ceresia, Powers and Mackey, JJ.

Hodgson Russ LLP, Rochester (Emanuela D'Ambrogio of counsel), for appellant.
Tabner, Ryan & Keniry, LLP, Albany (William F. Ryan Jr. of counsel), for respondent.

Mackey, J.
Appeals (1) from an order of the Supreme Court (Peter Lynch, J.), entered June 24, 2024 in Albany County, which, in a proceeding pursuant to EDPL article 5, determined the compensation due claimant as a result of the acquisition of real property, and (2) from a judgment entered thereon.
The underlying acquisition in this EDPL article 5 matter is familiar to this Court, having been the subject of a prior appeal (Matter of PSC, LLC v City of Albany Indus. Dev. Agency, 200 AD3d 1282 [3d Dept 2021], lv denied 38 NY3d 909 [2022]). By way of background, in 2019, Capitalize Albany Corporation (hereinafter CAC), a municipal corporation serving as the City of Albany's economic development arm, secured a grant to acquire and redevelop eight acres of land in a blighted area of the City known as Liberty Square. Claimant owned 0.88 acres therein, consisting of 11 parcels, 10 of which were leased for use as surface parking and one of which was overgrown. CAC was able to acquire all of the properties within the subject area, other than claimant's, through private transactions. Following unsuccessful negotiations with claimant, CAC applied to respondent to exercise its eminent domain powers to condemn claimant's property. Respondent approved the condemnation, and this Court confirmed respondent's determination (id. at 1289).
Following this Court's decision, respondent commenced a proceeding pursuant to EDPL article 4 to condemn the property, which petition was granted without opposition by Supreme Court (McDonough, J.), and the property was condemned in October 2022. Meanwhile, claimant accepted respondent's advance offer of $2,650,000 in just compensation for the subject properties, which amount was deposited with the court, with claimant reserving the right to seek additional compensation.[FN1] Claimant thereafter commenced this EDPL article 5 proceeding seeking just compensation totaling $7,200,000, plus interest, and respondent joined issue. Following a nonjury trial, Supreme Court (P. Lynch, J.) determined that claimant was entitled to a total of $5,393,000 in just compensation based upon its finding that the properties' highest and best use was commercial development, resulting in $2,743,000 in additional compensation beyond that already paid by respondent, plus interest. Respondent appeals from the order and the resulting judgment.
The crux of respondent's arguments on appeal is that Supreme Court erroneously determined that the subject properties' highest and best use was commercial development, as such use was not reasonably probable to occur at or near the time of taking and, thus, that the potential for redevelopment of the area should not have been considered in determining damages. "[W]hen private property is appropriated for public use, just compensation must be paid, which requires that the owner be placed in the financial position that he or she would have occupied had the property not been taken" (Matter of State of New York [KKS Props., LLC], 187 [*2]AD3d 1459, 1460 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 36 NY3d 912 [2021]; see US Const 5th Amend; NY Const, art I, § 7 [a]). Just compensation "must be measured based upon the fair market value of the property as if it were being put to its highest and best use on the date of the appropriation, whether or not the property was being used in such manner at that time" (Matter of County of Warren [Forest Enters. Mgt., Inc.], 182 AD3d 729, 731 [3d Dept 2020] [internal quotation marks and citations omitted]; see DiGiacomo v State of New York, 182 AD3d 977, 978 [3d Dept 2020]). Nevertheless, "it must be established as reasonably probable that the asserted highest and best use could or would have been made of the subject property in the near future" and "[a] use which is no more than a speculative or hypothetical arrangement in the mind of the claimant may not be accepted as the basis for an award" (Matter of City of New York [Rudnick], 25 NY2d 146, 149 [1969]; see Matter of City of New York [Broadway Cary Corp.], 34 NY2d 535, 536 [1974]; DiGiacomo v State of New York, 182 AD3d at 979). In this regard, "claimant bears the burden to show that the alleged highest and best use is capable of being accomplished 'within the reasonably near future' " (DiGiacomo v State of New York, 182 AD3d at 979, quoting Matter of City of New York [Broadway Cary Corp.], 34 NY2d at 536).
At trial, claimant presented the opinion of licensed appraiser Bruce Bauer. Bauer concluded that the highest and best use of the subject parcels was commercial development and that such was "reasonably probable" because the subject properties' zoning district permitted commercial development, it was reasonable to consolidate the parcels for inclusion in a unified redevelopment project, and commercial development was "potentially financially feasible." To his point, Bauer noted that development for the area had been "talked about for many years." Upon this basis, Bauer asserted that he would apply the sales comparison approach in determining damages because, in his view, the use of the subject properties to generate income from surface parking constituted merely an "interim use" and not the properties' highest and best use. Notwithstanding, Bauer conceded that there had not been any commercial development on the property sites in 30 years and that the 10 parking lot parcels could, at the time of the taking, still be used as such for another roughly 16 years under their ongoing lease. Nevertheless, he reiterated that, because the value of prospective commercial development "far exceeded" the value of continued use of the parcels for parking, he chose to apply only the sales comparison approach, yielding the properties' estimated value at $5,582,000.
Notably, however, respondent submitted letters prepared by Bauer for claimant's counsel in 2018, wherein he accepted an assignment to prepare an appraisal report for the subject properties for purposes of "confidential [*3]negotiations associated with a potential threatened condemnation proceeding." At that time, Bauer found the properties' "Net Present Value," according to a range of capitalization rates, to be between $2,175,000 and $2,900,000. Alternatively, using a sales comparison approach, he valued the properties between $1,435,000 and $2,050,000. In explanation, Bauer testified that his earlier assessment was an "analysis or scenario" and not a "full appraisal," but rather "just for [claimant's counsel's] internal decision making purposes and analysis."
Reaching a different conclusion, respondent's licensed appraiser, Darrel Lloyd Jr., identified the highest and best use for the subject properties to be continued use as a surface parking lot and, for the overgrown parcel, related assemblage. Lloyd agreed with Bauer that the highest and best use may be defined as "[t]he reasonably probable use of property that results in the highest value," as determined by evaluating whether it is "physically possible, legally permissible, financially feasible and [economically] maximally productive" (internal quotation marks omitted). He further agreed that the parcels' zoning classification made "a variety of uses" legally permissible and that the parcels were physically "developable" for a number of uses. However, he concluded that their distance from the main business district and other factors made commercial development of the parcels unlikely. In considering the possibility of residential and mixed-use development, Lloyd similarly concluded that the costs of assembling and purchasing nearby property toward this purpose would likely exceed any rental income generated. Having thus determined that continued use of the parcels for parking and for assemblage for parking was their highest and best use, Lloyd explained that, because the 10 parking lot parcels were generating income under a long-term surface parking lease, the income capitalization approach was "most appropriate" for determining their value. Lloyd found the direct sales comparison approach to be "most reliable" for the remaining parcel, as it was not generating income. He ultimately reached a total value of $2,660,000 for the subject properties.
Lloyd acknowledged that there was discussion of development in the surrounding area at the time he appraised the property but explained that, in his view, the discussions were directed at public rehabilitation rather than private commercial development, and public condemnation of the property would not necessarily lead to future commercial development. Said differently, conceding that the surrounding area was a "prime candidate" for development, Lloyd explained that favorability did not necessarily translate to demand. In point of fact, Lloyd detailed the history of the subject properties, noting that they had been retained as surplus property for a proposed convention center development before being opened up to private development in 2015. Bids had been solicited [*4]at that time, but "[n]o legitimate proposals" were received.
Upon this record, we agree with respondent that claimant failed to sustain its burden to show that there was a reasonable probability that pretaking use of the subject properties for commercial development "could or would have been made within the reasonably near future" (DiGiacomo v State of New York, 182 AD3d at 981; see Matter of City of New York [Broadway Cary Corp.], 34 NY2d at 536; compare Matter of County of Warren [Forest Enters. Mgt., Inc.], 182 AD3d at 734). Despite the potential for the future commercial development of the area, and even acknowledging that such could generate greater income than as yet achieved for the subject properties, nothing in the record supports finding that any such use was "reasonably probable . . . in the near future" at the time of the taking (Matter of City of New York [Rudnick], 25 NY2d at 149; see Matter of County of Warren [Forest Enters. Mgt., Inc.], 182 AD3d at 731-732; compare Matter of City of Long Beach v Sun NLF Ltd. Partnership, 124 AD3d 651, 652-653 [2d Dept 2015], lv denied 26 NY3d 902 [2015]). In point of fact, both appraisers agreed that recent decades had yielded no legitimate proposals to commercially develop the area. Claimant's unsupported assertion that commercial development of the area in the near future was nevertheless probable at the time of the taking amounts to mere speculation and, thus, may not provide the basis for an award (see Matter of City of New York [Broadway Cary Corp.], 34 NY2d at 536; Matter of City of New York [Rudnick], 25 NY2d at 149; DiGiacomo v State of New York, 182 AD3d at 979; J.W. Mays, Inc. v State of New York, 300 AD2d 545, 546-547 [2d Dept 2002], lv denied 99 NY2d 511 [2003]).[FN2]
Respondent's taking of the properties with the hope to facilitate and thereby incentivize commercial developers to consider the area in the future does not necessitate a different conclusion, as "condemned properties must be valued as of the date of the taking" (Matter of City of Long Beach v Sun NLF Ltd. Partnership, 124 AD3d at 653; see Matter of Queens W. Dev. Corp. [Nixbot Realty Assoc.], 139 AD3d 863, 865 [2d Dept 2016], lv denied 28 NY3d 901 [2016]; see also Peter Kiewit Sons' Co. v State of New York, 31 NY2d 944, 945-946 [1972]; Latham Holding Co. v State of New York, 16 NY2d 41, 47 [1965]), and it is well settled that "[a] condemnee may not receive an enhanced value for its property where the enhancement is due to the property's inclusion within a redevelopment plan" as "a condemnee is only entitled to compensation for what it has lost, not for what the condemnor has gained" (Matter of Queens W. Dev. Corp. [Nixbot Realty Assoc.], 139 AD3d at 865 [internal quotation marks, brackets and citations omitted]; see Matter of Village of Port Chester [Bologna], 95 AD3d 895, 897 [2d Dept 2012], lv denied 20 NY3d 852 [2012]; see also Peter Kiewit Sons' Co. v State of New York, 31 NY2d at 945-946; Latham Holding Co. v State of New [*5]York, 16 NY2d at 47; Matter of Village of Johnson City [Waldo's, Inc.], 215 AD2d 917, 919 [3d Dept 1995]).
Supreme Court found that the record supports a highest and best use of commercial development because "the land necessary for the development of Liberty Park has now been assembled," making commercial development in the near future probable. That, however, was error, as the effect of the Liberty Square redevelopment project on the likelihood of future commercial development was an improper consideration. The Supreme Court of the United States has explained that a landowner whose condemned property was included within a " 'public project from the beginning . . . should not be allowed an increased value for his [or her] lands' " resulting from the project itself (United States v Reynolds, 397 US 14, 17 [1970], quoting United States v Miller, 317 US 369, 376-377 [1943] [emphasis added]).[FN3] As there is no dispute that claimant's lands were included in the Liberty Square redevelopment project from the beginning, the effect of the project itself on the likelihood of future commercial development may not be considered.
Accordingly, the record does not support Supreme Court's finding that the highest and best use of the subject properties was commercial development; rather, given the dubious possibility of commercial development in the near future and as more than 15 years remained on the ground leases for 10 of the 11 parcels, the record supports respondent's position that the properties' highest and best use at the time of taking was continued use as surface parking.
Turning to the determination of appropriate damages, findings in this regard "must either be within the range of the expert testimony, or be supported by other evidence and adequately explained by the court" (DiGiacomo v State of New York, 182 AD3d at 979 [internal quotation marks and citations omitted]). "[W]here the parties offer inconsistent highest and best uses and their experts appraise only their own proposed uses, the award must be based upon the evidence offered by the party prevailing on the use question with such adjustments as the evidence will support" (Matter of County of Warren [Forest Enters. Mgt., Inc.], 182 AD3d at 735 [internal quotation marks, brackets and citations omitted]; see Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d 1087, 1089 [2d Dept 2016]). Having determined that the record does not support finding that the properties' highest and best use is commercial development, but continued surface parking, Supreme Court improperly rejected respondent's expert's appraisal (compare Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d at 1090-1091).
In reaching his appraisal determination, Lloyd employed the income capitalization method for the 10 parking lot parcels that were generating income under the surface parking lease. This method is "recognized to be the best indicator of value with respect to income-producing property[*6]" (Matter of Center Albany Assoc. LP v Board of Assessment Review of the City of Troy, 151 AD3d 1420, 1422 [3d Dept 2017] [internal quotation marks and citation omitted]), and may be assessed based upon estimating the market rent for the subject property (see Matter of Colonie Ctr. v Town of Colonie, 209 AD3d 1214, 1216-1217 [3d Dept 2022], lv denied 39 NY3d 916 [2023]). In contrast, Lloyd averred that the sales comparison approach was "most reliable" for the remaining parcel, as it was not generating income (see generally Matter of Johnstown Comrie Assoc., LLC v Assessor for the City of Johnstown, 234 AD3d 1085, 1087-1088 [3d Dept 2025]). Applying these approaches, he calculated a direct sales comparison value of $1,753,000 and an income capitalization value of $2,763,000 — the latter figure being reached in consideration of the parking lot parcels' existing lease.[FN4] Lloyd then reconciled the two values in detail by, among other considerations, affording them each relative weight to reflect "how investors would analyze the property," ultimately arriving at a total value of $2,660,000. Based upon the foregoing, we assess damages due claimant in the total amount of $2,660,000. Prior payments actually paid to claimant should be deducted from this amount (see Matter of County of Warren [Forest Enters. Mgt., Inc.], 182 AD3d at 738). The parties' remaining contentions need not be reached in light of our determination, or have been found to be without merit.
Aarons, J.P., Pritzker, Ceresia and Powers, JJ., concur.
ORDERED that the order and the judgment are modified, on the law and the facts, without costs, by decreasing the damages awarded to claimant to $2,660,000, and, as so modified, affirmed.

Footnotes

Footnote 1: Claimant obtained release of $2,611,077.94 of these funds as partial payment.

Footnote 2: With the benefit of hindsight, we note that in the intervening 3½ years since the taking, it does not appear that any potential redevelopment plans for the area have been moved forward.

Footnote 3: The Court distinguished this from a situation where the government later takes a nearby property that was not included in the original project. In such a case, the newly added property would benefit from an "increase in market value due to the proximity of the public improvement" (United States v Reynolds, 397 US at 17 [internal quotation marks and citation omitted]).

Footnote 4: Lloyd disclosed that his research did not reveal more than a few comparable private parking lot leases in the market area and, because the rents charged under those leases were similar to or less than the rents charged under the subject properties' 1988 lease, he made the extraordinary assumption that the rental rate under the 1988 lease was equivalent to market rent. Despite claimant taking issue with this approach, it did not offer any competing income capitalization valuation or other rent rate examples in the market area. To be sure, "[i]n most circumstances, actual income is the best indicator of value" (Matter of Center Albany Assoc. LP v Board of Assessment Review of the City of Troy, 151 AD3d at 1423 [internal quotation marks and citation omitted]; see Matter of Colonie Ctr. v Town of Colonie, 209 AD3d at 1217), and there is nothing in the record to contradict Lloyd's approach (compare Matter of Eagle Cr. Land Resources, LLC [Woodstone Lake Dev., LLC], 149 AD3d 1324, 1329 [3d Dept 2017], lv denied 29 NY3d 916 [2017]).