ONONDAGA SAVINGS BANK, Respondent-Appellant, v CALE DEVELOPMENT CO., INC., Appellant-Respondent, et al., Defendants.

Fourth Department, July 13, 1978

## APPEARANCES OF COUNSEL

*Emil, Kobrin, Klein & Garbus* (*Sidney Devorsetz* and *Lombardi, Devorsetz, Stinziano & Smith* of counsel), for appellant-respondent.

*Mackenzie, Smith, Lewis, Michell & Hughes* (*John F. Lawton* of counsel), for respondent-appellant.

## OPINION OF THE COURT

Simons, J.

These are appeals from a judgment and order which granted Onondaga Savings Bank a deficiency judgment in mortgage foreclosure proceedings involving property mortgaged to it by defendant Cale Development Co., Inc. The subject property is a leasehold acquired in 1965 by Cale from the Little Falls Urban Renewal Agency upon which Cale constructed a shopping center. In 1968 the lease was assigned by Cale to Randall Holden for $1.25 million. In December, 1974, when the mortgage was foreclosed, there was a balance due on the debt of $887,206.34. The property was sold at public auction to the bank, the only bidder, for $500,000.

■ Statutory law provides that the amount which a mortgagee may recover as a deficiency judgment shall be the lesser of (1) the difference between the amount due under the mortgage and the sale price, or (2) the difference between the amount due under the mortgage and the fair market value of the premises (Real Property Actions and Proceedings Law, § 1371, subd 2). The trial court found after a hearing that the property had a fair market value of $750,000 at the time of sale, an amount greater than the sale price but less than the mortgage debt and resulting in a deficiency, after crediting rental income, of $106,504.59. After making appropriate adjustments and adding interest and costs, judgment was entered for $119,110.06.

Cale contends that the court erred in determining gross income and in mathetically computing the net income, that it improperly ignored objective evidence of value, and that it should have denied the bank's application for a deficiency judgment because the bank was guilty of overreaching. In its cross appeal the bank maintains that the court's capitalization rate was unreasonably low and contrary to the weight of evidence.

In determining the value of this commercial property, the

court properly placed its primary reliance upon the capitalization of income theory of valuation (see *Kurnick v State of New York*, 54 AD2d 1098; *City of Buffalo v Joseph Davis, Inc.*, 32 AD2d 604, affd 26 NY2d 869), although it stated that it gave some weight to the market data presented. Essentially, it adopted the income and expense figures of the bank's expert, finding income of $160,000 less expenses of $84,500, for a net income of $77,000 *[sic]*. It accepted the testimony of Cale's experts on capitalization and applied a 9.5% rate to find market value. These are fact findings and it is familiar law that they will be upheld if they are within the range of testimony and are supported by the record, even if the court did not supply an explanation of its reasoning *(Kommit v State of New York*, 60 AD2d 945; *Empire Recycling Corp v State of New York*, 51 AD2d 855; *Matter of City of Rochester v Iman*, 51 AD2d 651; *Matter of City of New York [James Madison Houses]*, 17 AD2d 317, 324; cf. *Matter of City of New York [Oceanview Terrace]*, 42 NY2d 948).

Inasmuch as the income figures, in most instances, were the actual rental income and expense figures, they are not open to serious dispute. Cale contends that its experts' use of "stabilized" or adjusted rents was more probative of value because the property was burdened by poor management and uneconomic leases. Nevertheless, the tenants executed the leases with Cale under the market conditions existing at that time and in the absence of proof of special circumstances unnaturally depressing the rents, the addition of bonus values by one of Cale's appraisers to compensate for "uneconomic" leases was improper *(Matter of Merrick Holding Corp. v Board of Assessors of County of Nassau*, 58 AD2d 605; cf. *People ex rel. Gale v Tax Comm. of City of N. Y.*, 17 AD2d 225). The appraisers used comparable expense figures and the finding of net income is supported by the evidence in the record.

The central issue in dispute is the unexplained capitalization rate found by the court.

■ ■ There are no fixed rules for establishing a capitalization rate, rather, it " 'should be * * * a reflection of the market rate, that is, what the investment market requires in return from a property of the age, kind, condition and location as the subject property. As such, it is a matter of proof and argument' *(Matter of City of New York [First Elephant Estates—La Hermosa Church]*, supra, p 324)." *(Kurnick v State of New York*, supra, p 1098.) The appraisers in this case

testified to three different capitalization rates. The bank's witness found a capitalization rate of 12.5% by using the band of investment theory (a 75% mortgage times 9.5% interest plus 25% equity times 12% yield, plus 2.4% depreciation or recapture equals 12.5%). One of Cale's appraisers, using the same theory, found a capitalization rate of 11.5% using the same method but a lower 10% yield on equity for investments in shopping center real estate subject to long-term leases with national tenants. Cale's other appraiser employed a capitalization rate of 9.5% by assuming a 9.5% mortgage and 10% yield for 10 years and then used the capitalization rate found from the Ellwood Tables (Ellwood Tables for Real Estate Appraising and Financing [2d ed], Compiled for American Institute of Real Estate Appraisers by L. W. Ellwood; see, also, Boechk's Building Evaluation Manual [1967 printing], p 9). These tables provide a mortgage-equity capitalization method which applies to relatively short holding periods, in this case 10 years, and reflects depreciation and appreciation along with various other investor considerations. The bank's appraiser did not consider the Ellwood method but he acknowledged that it was an acceptable appraisal technique and in view of the evidence in the record that this was a secure investment, we think the court's decision accepting this relatively low capitalization rate should be affirmed.

Implicit in this decision is the significant factor that the property is at most subject to minimal economic or physical depreciation in the near term. The shopping center is new and favorably situated in a good commercial area of a stable and expanding community. The ground lease of the premises on which it is built is economically favorable to Cale, the lease is for a term of 50 years with options to renew for an additional 49 years, and the major tenants are four national concerns. The unfavorable factors affecting the property's value related entirely to poor management resulting in excessive vacancies and low rentals. The management may be changed and with the passage of time the income should improve as several existing vacancies are filled and as existing uneconomic leases expire and are replaced. Although many of the tenants enjoyed long-term leases with options to renew, most of the existing leases will terminate by 1983. Furthermore, it may be anticipated that the existing leases with overage clauses will show improved rental income through the natural course of inflation and because their volume improves as the businesses

become established. Many of the leases, notably those to the prime long-term tenants, contain tax clauses minimizing the risk of seriously escalating expenses to the lessor. Based upon this evidence of a fundamentally sound property with secure tenants, we are unable to say the court's selection of a 9.5% capitalization rate is not supported by the evidence.

▌ Cale also contends the value should be higher because of the objective evidence of value evidenced by the bank's original appraisal in 1966, the amount of the mortgage loan and, primarily, the 1968 "sale" of the leasehold to Holden. Objective evidence of a property's value, particularly a recent sale of the same premises, is evidence of the "highest rank" in determining the true market value of real property (*Plaza Hotel Assoc. v Wellington Assoc.,* 37 NY2d 273, 277; see, also, *Day v State of New York,* 39 AD2d 821; *Dipson Realty Co. v State of New York,* 39 AD2d 636). Even in cases where the sale preceded the valuation date by several years, as did the 1968 transfer here, the courts have considered it relevant evidence (see *Lafayette Nat. Bank v Blansky,* 271 App Div 1030). We find no error, however, in the court's disinclination in this case to give importance to these earlier transactions. Cale's appraisers did not rely on the figures (although they apparently considered them as checks) and in fact both appraisers' findings of value were substantially below the 1968 price for the assignment of the lease or the amounts of the earlier mortgage appraisal and loan. Objective evidence that was perhaps more significant, although not controlling of course, was the evidence that the improvements to the property were assessed (at a 98% equalization rate) for $785,000 in 1974 and for $720,000 in 1975 (see *Chalmers & Sons v State of New York,* 35 AD2d 864).

Finally, inasmuch as we find no overreaching by the bank, we need not decide whether a court may be justified in denying a mortgagee a deficiency judgment because of its inequitable conduct. Cale has not requested that the foreclosure sale be voided and indeed the discrepancy between the amount of the debt and the bid price is not so egregious as to warrant that relief (see *Hammerman v Ferguson,* 50 AD2d 853, app dsmd 39 NY2d 797; *State Realty & Mtge. Co. v Villaume,* 121 App Div 793).

In approving the court's decision, we find it necessary to make certain minor adjustments. The evidence of expenses apparently accepted by the court included an item of $8,000

for insurance premiums predicated on the installation of sprinklers for the entire building. Absent this improvement, Cale's appraisers testified sufficient insurance coverage could be obtained for $11,000-$11,700. Therefore, after adding $3,700 to the expense account for insurance premiums, the net income in computed as follows:

Gross Income $161,299

Less expenses - $84,465 + $3,700 = 88,165

$73,134 divided by 9.5% capitalization rate equals market value $769,831.

Although all three appraisers testified that the property required substantial repairs to the roof and in finishing approximately 5,600 square feet of rentable floor space, the trial court did not deduct this expense from the market value. The appraisers' estimates for the cost of this maintenance were $19,115 and $20,800. $20,000 should be deducted from the market value for deferred maintenance, resulting in a final value of $749,831 rounded to $750,000, the value found by the trial court.

The judgment and order should be affirmed.

CARDAMONE, J. P., HANCOCK, JR., and WITMER, JJ., concur; DENMAN, J., not participating.

Judgment and order unanimously affirmed, without costs.