In the Matter of JOHN P. BURKE APARTMENTS, INC., Respondent-Appellant, v MICHAEL SWAN, as Assessor of the Town of Queensbury, Appellant-Respondent, and QUEENSBURY UNION FREE SCHOOL DISTRICT, Intervenor-Appellant-Respondent.

Third Department, May 26, 1988

## APPEARANCES OF COUNSEL

*Wilson S. Mathias* for appellant-respondent.

*Bartlett, Pontiff, Stewart, Rhodes & Judge, P. C. (Patricia E. Watkins* and *J. Lawrence Paltrowitz* of counsel), for intervenor-appellant-respondent.

*Pileckas & Pileckas (Paul L. Pileckas* of counsel), for respondent-appellant.

## OPINION OF THE COURT

KANE, J.

In this proceeding, petitioner disputes respondent's assessment of taxes on certain real property located in the Town of Queensbury, Warren County, for the years 1979 through 1982. During those years, the property in question, a Federal Department of Housing and Urban Development (hereinafter HUD) low-income housing project (hereinafter the project), was owned by petitioner, a not-for-profit corporation. In contesting the assessment, petitioner filed separate petitions for each of the tax years at issue. These petitions were consolidated and heard together by Supreme Court. After hearing testimony and reviewing the appraisals and evidence submitted by both sides in support of their respective positions, the court, while not agreeing with all of petitioner's assertions, did find certain errors in respondent's assessment and accordingly ordered a reduction in the assessment. These cross appeals ensued.

Preliminarily, we address the question of whether the conditions imposed upon intervenor, Queensbury Union Free School District (hereinafter the school district), by Supreme Court were proper. In permitting the school district to intervene, the court was free to impose reasonable conditions on that intervention *(see,* 2 Weinstein-Korn-Miller, NY Civ Prac ¶ 1013.03). Here, Supreme Court refused to permit the school district to call its own witnesses or to cross-examine petitioner's witnesses. Unquestionably, the grant of intervention was proper, given the school district's financial interest in the outcome of the proceeding in the form of potential liability to

petitioner for a tax refund *(see, Vantage Petroleum v Board of Assessment Review,* 91 AD2d 1037, *affd* 61 NY2d 695). As a result, the school district's interests were the same as those of respondent and, on that basis, we find no abuse of discretion in the conditions imposed by the court. Their effect was merely to restrict representation to the attorney for respondent, who, in arguing respondent's position, adequately protected the school district's interests as well *(see, e.g., City of Buffalo v State Bd. of Equalization & Assessment,* 44 Misc 2d 716, 718; *Fleitman v Simpson,* 9 Misc 2d 398, 401-402). Furthermore, the school district presented no appraisal of its own, relying instead on respondent's. A party who fails to serve an appraisal report is precluded from offering expert testimony as to value (22 NYCRR 202.59 [h]; *see, Matter of Expressway Vil. v Brearly,* 112 AD2d 718, 719).

■ Next, we turn to the issues raised by respondent on its appeal. In making their appraisal reports of the project, both petitioner's expert, Richard Kelley, and respondent's expert, James McGuire, considered three valuation techniques: the income capitalization approach, the cost approach and the market data approach. In establishing the project's value, Kelley emphasized the income approach while McGuire emphasized the market data approach. In rejecting the market data approach, Kelley found no "relevant" comparable sales. McGuire, however, took into account two basically simultaneous sales of the project that occurred on September 30, 1983. The first sale to an individual was for approximately $3.9 million with $160,000 to be paid directly to petitioner for reimbursement of original landsite cost and development and included an assumption of a $3.7 million HUD mortgage. This individual then immediately conveyed the project for $4.3 million to a limited partnership, of which he was a general partner, which assumed the $3.7 million HUD mortgage and a second mortgage for payment of over $300,000 in interest arrears to HUD and paid the $160,000 to petitioner. Kelley had rejected these sales, finding them to be inflated and noting that the present face value of the approximately $4.2 million mortgage would be about $1,260,000. In its decision, Supreme Court accepted the income approach as suggested by Kelley. Respondent argues that this was error and that the court failed to give proper consideration to the market data method. We disagree.

Even if the recent sales in this case are accepted as being at arm's length and not abnormal, this is nevertheless not deter-

minative and a court may still consider alternative methods such as the income approach *(see, Matter of Kings Mayflower v Finance Adm'r of City of N. Y.,* 63 AD2d 970). Furthermore, the income approach is generally regarded as the preferred method to determine the value of income-producing property such as petitioner's *(see, 41 Kew Gardens Rd. Assocs. v Tyburski,* 70 NY2d 325, 331). There is ample evidence in the record to support Supreme Court's use of the income approach and its factual findings were within the range of testimony offered *(see, Onondaga Sav. Bank v Cale Dev. Co.,* 63 AD2d 415, 418). Additionally, the court's decision may also be upheld even if it did not supply an explanation of its reasoning as respondent contends *(see, supra).*

Further support for Supreme Court's use of Kelley's income approach is found in its rejection of McGuire's appraisal report on the ground that it consistently made "conclusions without supporting calculations, rendering it impossible * * * to analyze" the report. The failure of an appraiser to identify or adjust allegedly comparable sales to the subject property prevents any possibility of review rendering such appraisal and supporting testimony insufficient *(see, Matter of Estate of Taylor v State of New York,* 39 AD2d 984, 985; *Geffen Motors v State of New York,* 33 AD2d 980). In writing his report, an appraiser is expected to set forth his explanations and adjustments *(Matter of Estate of Taylor v State of New York, supra).* The record supports Supreme Court's conclusion that McGuire failed to satisfy these requirements. Among other things, he failed to set forth the location of the comparable sales, the names of other apartments in the same area of the project which could be used as comparables for market value, any dollar and cents adjustments to the subject sale and any factor he considered relevant to such necessary adjustments. There was also no breakdown for the figures listed as expenses. Thus, Supreme Court properly rejected McGuire's appraisal.

■ We also reject respondent's claim that Supreme Court improperly applied the income approach, the expense figures and the capitalization rates. As to the court's computation of the capitalization rate, there is no fixed rule regarding such a rate's use in valuing property under the income approach *(see, Matter of Continental Assur. Co. v Mayor of Inc. Vil. of Lynbrook,* 113 AD2d 795, 797, *appeal dismissed* 66 NY2d 915). Such a determination is a factual question and all that is required is that there be evidence to support the value arrived

at by the court *(see, Kurnick v State of New York,* 54 AD2d 1098). Here, the court added the standard interest rate and the effective tax rate to arrive at the capitalization rate. Kelley's appraisal had determined the rate by adding the basic interest rate to the tax factor. The rates arrived at by the court were within the range of rates suggested by Kelley and McGuire in their respective reports. Therefore, support for the court's decision is again found in the record and, again, it was not required to supply an explanation of its reasoning *(see, Matter of Schoeneck v City of Syracuse,* 93 AD2d 988; *Onondaga Sav. Bank v Cale Dev. Co.,* 63 AD2d 415, 418, *supra).*

Next, respondent claims that Supreme Court adjusted the income without taking into account an adjustment of expenses. However, although respondent's witnesses disagreed with Kelley's calculation of expenses, Kelley's appraisal constitutes substantial evidence for the court's acceptance of the expenses as stated therein *(see, Matter of Schoeneck v City of Syracuse, supra).* Thus, the court properly applied the income approach by considering the appropriate adjustments to alleged income and expenses and by using an appropriate capitalization rate. For the same reasons, we also reject petitioner's contentions regarding the utilization of allegedly improper interest rates or capitalization rates as such were reasonable and supported by the record *(see, Kurnick v State of New York,* 54 AD2d 1098, *supra).*

■ Finally, we address the issues raised by petitioner on its appeal. It initially argues that Supreme Court improperly added $50 per month to the actual rental price of each of the project's apartments. However, while actual rents often offer the best indication of fair market value, if actual rents are higher or lower, another figure may be adopted *(Matter of City of Albany [Johnson],* 136 AD2d 818, 819). Here, HUD fixed the rents for low-income tenants and respondent's witnesses testified that such rents were far below fair market value. There was also testimony that the project was comparable to another apartment complex where the rents were approximately $50 higher. Thus, the record supports the figure chosen by the court *(see, supra).*

■ However, we do agree with petitioner's claim that Supreme Court improperly added in the value of the land in applying the income approach to valuation. The use of an over-all capitalization rate implies that income is derived in equal shares from the land and buildings *(see, Matter of City*

*of New York [Oceanview Terrace],* 42 NY2d 948, 950). Split capitalization rates, where two separate rates are given to the land and the buildings, is called for where there is evidence of a wide discrepancy between the value of the land and the value of the buildings as to render uncertain the assumption that income is equally derived from the land and buildings *(see, supra).* No such evidence is presented in the case at hand; therefore, it was improper for the court to separately add in the value of the land in its calculations.

■ Supreme Court also erred in disallowing the vacancy allowances taken by Kelley in his appraisal report. Kelley noted that the vacancy rate was low and that there was a waiting list. He calculated the vacancy rate to be between 1% and 3%, which corresponded with petitioner's actual vacancy rate. The court, however, disallowed these deductions, finding the 1% to 3% figure inconsistent with petitioner's reference to a waiting list. However, as petitioner notes, vacancy losses may result from a variety of factors such as turnover lags and time lags in filling vacancies and, therefore, are not necessarily inconsistent with the existence of a waiting list.

MAHONEY, P. J., CASEY, WEISS and MERCURE, JJ., concur.

Judgment modified, on the law, without costs, by reversing so much thereof as (1) added the market value of the land to the fair market value of the project arrived at by the capitalization of income method, and (2) disallowed petitioner's vacancy losses; matter remitted to the Supreme Court for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed.