Matter of Cohoes Falls L.P. v Board of Assessment Review (2021 NY Slip Op 03507)





Matter of Cohoes Falls L.P. v Board of Assessment Review


2021 NY Slip Op 03507


Decided on June 3, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 3, 2021

531765
[*1]In the Matter of Cohoes Falls Limited Partnership, Appellant,
v
Board of Assessment Review et al., Respondents. (And Two Other Related Proceedings.)

Calendar Date:April 27, 2021

Before:Garry, P.J., Egan Jr., Lynch and Colangelo, JJ.

Goldman Attorneys PLLC, Albany (Paul J. Goldman of counsel), for appellant.
The Vincelette Law Firm, Albany (Stephen M. Almy of counsel), for respondents.



Lynch, J.
Appeal from a judgment of the Supreme Court (Walsh, J.), entered July 6, 2020 in Albany County, which dismissed petitioner's applications, in three proceedings pursuant to RPTL article 7, to reduce the 2014, 2015 and 2016 tax assessments on certain real property owned by petitioner.
Petitioner owns nine noncontiguous parcels of real property in the City of Cohoes, Albany County (hereinafter the subject properties). Eight of the parcels are improved with a total of 66 apartments, 64 of which are restricted for low-income tenants whose rents are subsidized under a regulatory agreement with the US Department of Housing and Urban Development (hereinafter HUD). The buildings on these eight parcels were originally constructed in the late 19th century and extensively renovated after petitioner acquired the subject properties in 2011 for $4.2 million. Petitioner constructed a building on the ninth parcel for a management office. Petitioner commenced these three RPTL article 7 proceedings challenging respondents' tax assessments for the 2014, 2015 and 2016 tax years. For each of these years, the subject properties were assessed for $1.98 million, with an equalized fair market value of $3,666,667 in 2014 and 2015 and $3,975,900 in 2016.[FN1] At the ensuing nonjury trial, petitioner presented the testimony and report of its expert appraiser, John O'Neill, who opined that the market value of the subject properties was $2,800,000, $2,900,000 and $2,600,000 for tax years 2014, 2015 and 2016, respectively. Respondents offered a competing report and expert testimony from Barry Herbold, valuing the properties at over $4 million for each tax year. Supreme Court determined that petitioner failed to prove that the properties were overvalued and dismissed the petitions. Petitioner appeals.
There is no dispute that petitioner met its threshold burden of establishing a prima facie valuation issue through a competent appraisal (see Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack, 92 NY2d 179, 187 [1998]). As such, our task is to "weigh the entire record, including evidence of claimed deficiencies in the assessment, to determine whether petitioner[] [has] established by a preponderance of the evidence that [the] property has been overvalued" (Matter of AG Props. of Kingston, LLC v Town of Ulster Assessor, 138 AD3d 1273, 1277 [2016], lv denied 27 NY3d 912 [2016] [internal quotation marks and citations omitted]).
The parties recognize that the subject properties must be assessed under the standard set forth in RPTL 581-a for low income housing. That statute, enacted in 2005 to promote the "underlying goal of encouraging developers to build affordable housing," requires that valuation be based on actual net operating income (Matter of Warrensburg Commons LPT v Town Assessor of Town of Warrensburg, 69 AD3d 1282, 1283 [2010]). Specifically, the statute directs, as relevant here, that the assessed valuation "shall be determined using the income approach as applied [*2]to the actual net operating income, after deducting for reserves required by any federal, state or municipal programs" (RPTL 581-a). As used in the statute, "net operating income" means "the actual or anticipated net income that remains after all operating expenses are deducted from effective gross income, but before mortgage debt service and book depreciation are deducted" (RPTL 581-a). The statute further instructs that "[t]he assessed valuation of real property used for such residential rental purposes shall be determined using the actual net operating income, and shall not include federal, state or municipal income tax credits, subsidized mortgage financing, or project grants . . . used to offset the project development cost in order to provide for lower initial rents" (RPTL 581-a [emphasis added]). Both appraisers utilized the income approach, through which valuation is determined by dividing the actual net operating income by the appropriate capitalization rate.
With respect to actual net operating income, O'Neill utilized income data for years 2014, 2015 and 2016. As Supreme Court observed, the valuation date for each tax year is July 1 of the preceding year, while the taxable status date is March 1 of each year (see RPTL 301, 302 [1]). This structure requires the use of annual data pertinent to the valuation date and, under the governing regulations, petitioner was required to provide respondents with data up to the March 1 taxable status date (see 9 NYCRR 2656.3). Despite this discrepancy, the record shows that the income data was stable throughout this period and O'Neill's corrected calculations were only slightly different from Herbert's established average of $309,000 for each tax year. As such, we cannot agree with Supreme Court's conclusion that O'Neill's "approach" was "entitled to limited weight." This is particularly so given petitioner's concession in its brief to utilize Herbert's calculation. We will do so here.
The key dispute centers on the capitalization rate. This is where the statutory restrictions underscored above apply. "The capitalization rate represents the return an investor would expect if the property were purchased and it is a crucial variable since small differences in it are magnified when net income is converted to capital value" (Shore Haven Apts. No. 6 v Commissioner of Fin. of City of N.Y., 93 AD2d 233, 236 [1983] [citations omitted]; see Onondaga Sav. Bank v Cale Dev. Co., 63 AD2d 415, 418 [1978]). Stated differently, the capitalization rate "should be . . . a reflection of the market rate, that is, what the investment market requires in return from a property of the age, kind, condition, and location as the subject property" (Matter of City of New York [First Elephant Estates—La Hermosa Church], 17 AD2d 317, 324 [1962]). The record shows that the subject properties enjoyed a significant low-income housing tax credit (hereinafter LIHTC) and subsidized mortgage financing. As reflected in RPTL [*3]581-a, these are the beneficial financing attributes that encourage developers to build affordable housing. At the same time, these benefits are statutorily excluded from the assessment valuation because the apartments cannot be leased at market rates.
O'Neill testified that his appraisal report complied with RPTL 581-a and the record confirms as much. He explained that the capitalization rate consists of both a debt component and an equity component, which relate to what a lender would charge to loan funds and the return that an owner would be seeking on the investment. To determine the capitalization rate, O'Neill used four different approaches, which produced rates between 8.5% and 9%. Placing more weight on the Ellwood Mortgage Equity and Band of Investment methodologies, O'Neill selected the 9% rate. Coupling that rate with the effective tax rate,[FN2] he calculated a market value of $2.8 million for 2014, $2.9 million for 2015 and $2.6 million for 2016. Herbold also used the Band of Investment methodology, based on mortgage and equity components, as well as market surveys, and selected a capitalization rate of 4%. Utilizing this rate indicated a market value of $4,250,300 for 2014, $4,227,100 for 2015 and $4,238,700 for 2016.
Petitioner maintains that Supreme Court erred in adopting Herbold's valuation because the 4% capitalization rate was computed in violation of RPTL 581-a. We agree. A review of Herbold's appraisal report shows that he based the equity component of the formula on the "LIHTC structure." Noting that the subject properties had mortgages with interest rates between 1% and 6%, Herbold identified the mortgage component at 4%. In his testimony, Herbold explained that he choose a rate "at the lower end of the range" based on "the overall [LIHTC] structure of the investment because it has a very low risk element, a stable income stream and the very good condition of the improvements." While Herbold could certainly rely on the last three factors, his analysis directly conflicts with the plain language of RPTL 581-a, which prohibits any consideration of income tax credits and subsidized financing to enhance the value of the property. Supreme Court recognized that Herbold's capitalization rate determination was "not without flaw," but reasoned that, even if the rate was adjusted "to 4.5% to discount consideration of the tax credit and bring rates within the ranges of the Rynne Murphy [ & Associates Real Estate Market Investment] surveys, there would be no overvaluation."[FN3] We find this rationale unavailing because, having violated RPTL 581-a, Herbold's appraisal was foundationally flawed.
We turn then to O'Neill's calculation of the capitalization rate. O'Neill testified that the Rynne Murphy survey reported an overall average capitalization rate of 8.5% for the urban apartment market in New York. He explained that, "due to the age and multi-building configuration[,] the subject propert[ies] will likely have a capitalization [*4]rate somewhat above the average" in view of increased maintenance requirements. At the same time, petitioner is required by HUD to maintain a reserve fund for future repairs. Despite the age of the buildings, O'Neill testified that the quality and appeal of the apartments was "average to maybe slightly above average for the Cohoes older residential market." Moreover, the properties enjoy a stable income stream backed by HUD. Although O'Neill insisted that the properties did not qualify as "investment grade," he acknowledged that petitioner was an out-of-state "national investor." We find O'Neill's valuation plausible, but, considering the described factors, conclude that a downward adjustment of the capitalization rate to 7% is warranted. Based on that rate, the indicated market value for the subject properties is $3,008,763 for 2014, $2,997,090 for 2015 and $3,080,785 for 2016.[FN4] These values correspond to an assessed value of $1,624,732 for 2014, $1,618,428 for 2015 and $1,534,230 for 2016 (calculated by multiplying the market value by the state equalization rate). Accordingly, the petitions should be granted to the extent set forth herein.
Garry, P.J., Egan Jr. and Colangelo, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by partially granting the petitions to the extent of reducing the assessments as set forth in this Court's decision, and, as so modified, affirmed.



Footnotes

Footnote 1: The parties stipulated that the state equalization rate was 54% for 2014 and 2015 and 49.8% for 2016.

Footnote 2: Both assessors used an effective tax rate of 3.27% for 2014 and 3.31% for 2015. For 2016, O'Neill used a rate of 3.31% while Herbold used a rate of 3.29%. The overall capitalization rate is calculated by adding the capitalization rate and the effective tax rate.

Footnote 3: Both appraisers relied on the Rynne Murphy & Associates Real Estate Market Investment survey, which reported capitalization rates for urban apartment projects in New York as ranging from 5.5% to 16.5% in 2013, and from 4.5% to 16.75% for urban small multi-family apartments. The average capitalization rate for both categories of apartments was 8.25%.

Footnote 4: These values are calculated as follows:
2014: $309,000 divided by [7% + 3.27%] = $3,008,763
2015: $309,000 divided by [7% + 3.31%] = $2,997,090
2016: $309,000 divided by [7% + 3.03%] = $3,080,785