Matter of Empire Realty Invs. I LLC v Board of Assessment Review of the Town of E. Greenbush (2022 NY Slip Op 06052)

Matter of Empire Realty Invs. I LLC v Board of Assessment Review of the Town of E. Greenbush

2022 NY Slip Op 06052

Decided on October 27, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 27, 2022

534186
[*1]In the Matter of Empire Realty Investors I LLC et al., Petitioners, and Forrest Pointe II LLC et al., Respondents,
v
The Board of Assessment Review of the Town of East Greenbush et al., Appellants, et al., Respondent.

Calendar Date:September 8, 2022

Before:Lynch, J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

The Vincelette Law Firm, Albany (Stephen M. Almy of counsel), for appellants.
Goldman Attorneys, PLLC, Albany (Paul J. Goldman of counsel), for Forrest Pointe II LLC and others, respondents.

McShan, J.
Appeal from an amended judgment of the Supreme Court (Andrew G. Ceresia, J.), entered April 7, 2021 in Rensselaer County, which granted petitioners' application, in a proceeding pursuant to RPTL article 7, to reduce the 2018 tax assessment on certain real property owned by petitioners Forrest Pointe II LLC and Forrest Pointe III LLC.
Petitioners Forrest Pointe II LLC and Forrest Pointe III LLC (hereinafter collectively referred to as petitioners) are the owners of certain parcels located in the Town of East Greenbush, Rensselaer County that are improved by income-producing rental units.[FN1] More specifically, Forrest Pointe II LLC is the owner of a parcel improved by an apartment complex located on Forrest Point Drive (hereinafter Forrest Pointe II) and Forrest Pointe III LLC is the owner of a parcel improved by 10 noncontiguous townhomes located on Rockrose Drive (hereinafter Forrest Pointe III). In the 2018 tax assessment, Forrest Pointe II was valued at $14,690,000, and each townhome within Forrest Pointe III was valued between $202,000 and $212,000 with a collective valuation of $2,065,000. Petitioners requested a reassessment of these valuations from respondent Board of Assessment Review of the Town of East Greenbush, which was denied, leading to the present proceeding seeking review of the assessments.[FN2] At a nonjury trial, petitioners presented the testimony and report of their appraiser, John O'Neill, who opined that the Forrest Pointe II property had a market value of $8,900,000, and the 10 townhomes comprising Forrest Pointe III had a collective value of $1,430,000. In rebuttal, respondents offered a report and testimony from Stephen Clark, who valued the Forrest Pointe II property at $12,600,000 and the townhomes compromising the Forrest Pointe III property at $2,120,000. At the conclusion of trial, Supreme Court agreed with petitioners that the properties were overvalued and reduced the valuation of Forrest Pointe II to $9,353,404 and the collective valuation of the townhomes comprising Forrest Pointe III to $1,500,000. Respondents appeal.
Respondents do not dispute that petitioners met their threshold burden to rebut the presumption of validity on the value of the properties (see Matter of Cohoes Falls L.P. v Board of Assessment Review, 195 AD3d 1126, 1127 [3d Dept 2021]; Matter of Center Albany Assoc. LP v Board of Assessment Review of the City of Troy, 151 AD3d 1420, 1421 [3d Dept 2017]). Accordingly, we are tasked with "weigh[ing] the entire record, including evidence of claimed deficiencies in the assessment, to determine whether petitioner[s] established by a preponderance of the evidence that the propert[ies] ha[ve] been overvalued" (Matter of Foxcroft Vil., LLC v Town Assessor of the Town of Fallsburg, 176 AD3d 1527, 1529 [3d Dept 2019] [internal quotation marks and citations omitted]; see Matter of Brookdale Senior Living Solutions & Meriweg Latham LLC v Town of Colonie Bd. of Assessment Review, 186 AD3d 1801, 1804 [3d Dept 2020[*2]], lv denied 37 NY3d 902 [2021]; Matter of Champlain Ctr. N. LLC v Town of Plattsburgh, 165 AD3d 1440, 1443 [3d Dept 2018]). Upon this Court's review, "[i]nasmuch as the valuation of property is largely a question of fact, we give deference to [Supreme Court's] resolution of credibility issues and will affirm [its] decision unless it is based on an erroneous legal determination or it appears that the [court] failed to appropriately weigh conflicting evidence" (Matter of Foxcroft Vil., LLC v Town Assessor of the Town of Fallsburg, 176 AD3d at 1529; see Matter of Brookdale Senior Living Solutions & Meriweg Latham LLC v Town of Colonie Bd. of Assessment Review, 186 AD3d at 1804; Matter of Gran Dev., LLC v Town of Davenport Bd. of Assessors, 124 AD3d 1042, 1046 [3d Dept 2015]).
The record establishes that Forrest Pointe II is a 96-unit apartment complex comprised of 12 two-story buildings, four garage buildings and two self-storage buildings that was constructed between 2006 and 2007 and completed in May 2007. Forrest Pointe III is a 10-unit apartment project comprised of five one-story, side-by-side townhome units that was completed in the mid-2000's. Both experts agreed that the properties were well maintained and, while both generally agreed that they were in good condition, Clark maintained a more favorable opinion of the overall condition of both properties. In their respective assessments, both experts utilized the favored income-capitalization approach based upon the undisputed character of Forrest Pointe II and Forrest Pointe III as income-producing rental properties (see Matter of Center Albany Assoc. LP v Board of Assessment Review of the City of Troy, 151 AD3d at 1422; Matter of Village Sq. of Penna, Inc. v Board of Assessment Review of the Town of Colonie, 123 AD3d 1402, 1404 [3d Dept 2014], lv denied 25 NY3d 903 [2015]). The experts additionally utilized the sales comparison approach to buttress their assessments, although they differed on the weight of that valuation in their assessment conclusions. The experts also differed on their various calculations concerning gross income and operational expenses and Supreme Court adopted reasoning from each of them in determining the proper figures to utilize in the assessment calculations.
On this appeal, respondents' arguments center around the capitalization rate and the manner in which the experts arrived at their differing figures, from which Supreme Court principally favored the methods and conclusions of petitioners' expert (see Matter of Cohoes Falls L.P. v Board of Assessment Review, 195 AD3d at 1128; Matter of Center Albany Assoc. LP v Board of Assessment Review of the City of Troy, 151 AD3d at 1422; Shore Haven Apts. No. 6 v Commissioner of Fin. of City of N.Y., 93 AD2d 233, 234 [2d Dept 1983]). To this end, respondents argue that Supreme Court's determination is against the weight of the evidence inasmuch as it improperly relied on petitioners' expert to determine the capitalization [*3]rate for the properties even though both experts utilized the same survey data in their respective assessments. Respondents further contend that the court abused its discretion by failing to determine whether the properties were institutional grade and improperly discounting their expert's use of national data in rejecting his assessments.
With respect to the experts' reliance on survey data, both O'Neill and Clark testified to utilizing the Rynne Murphy & Associates Real Estate Market Investment surveys as part of their determination of an appropriate capitalization rate. As testified to by O'Neill, the Rynne Murphy survey provided a capitalization rate range of 4% to 12.75% with an average of 7.25%. O'Neill compared the data in the Rynne Murphy survey to the calculated rates he compiled using the Ellwood Mortgage Equity and the Band of Investment methodologies and selected a capitalization rate for both properties of 8.10%.[FN3] Conversely, while Clark relied in part on the Rynne Murphy figures in arriving at capitalization rates of 5.75% for Forrest Pointe II and 5.5% for Forrest Pointe III, he further utilized national survey data from PricewaterhouseCoopers, LLP (hereinafter PwC).[FN4] Supreme Court found that O'Neill's assessment was more reliable because it was derived from the Rynne Murphy survey which relied exclusively upon data from "properties in Upstate New York."
Relatedly, the experts greatly differed on their conclusion as to whether Forrest Pointe II would meet the criteria to be characterized as an institutional grade property. O'Neill conceded that a non-institutional grade property would merit a higher capitalization rate, which would in turn generate a lower valuation figure. However, O'Neill was adamant in his belief that Forrest Pointe II did not meet the criteria for an institutional grade property. To this end, O'Neill opined that institutional grade properties tended to be located in major markets, are less than 10 years old and generally encompass more than 200 units. O'Neill concluded that the Town of East Greenbush would not be considered a "prime market area for institutional investors" and, additionally, that Forrest Pointe II did not satisfy the size criteria that would draw interest from larger investors. For these reasons, O'Neill did not utilize national survey figures in his capitalization rate conclusion. Conversely, Clark believed that Forrest Pointe II is an institutional grade property "[d]ue to its age" and that a national investor would be interested in purchasing it. However, he did not expound upon this explanation during his testimony and his report did not dedicate any analysis directly reflecting that he had factored institutional grade status into his assessment calculations. To this end, beyond the testimony of the experts, the only other evidence concerning institutional grade properties consisted of a brief summary from a PwC survey that described certain factors that a property would need to meet to [*4]be considered as an institutional grade property.
Ultimately, we find no basis to disturb Supreme Court's decision to credit O'Neill's capitalization rate based upon its reliance on local data (see Matter of Brookdale Senior Living Solutions & Meriweg Latham LLC v Town of Colonie Bd. of Assessment Review, 186 AD3d at 1805). Respondents focus on the fact that O'Neill's capitalization rates for both properties were slightly above the average rate of 7.25% identified in the Rynne Murphy survey, contending that the record fails to support that conclusion owing to the evidence of the properties' relatively young age in the East Greenbush market. However, O'Neill's rate was consistent with the rates he had derived from the Ellwood Mortgage Equity and the Band of Investment methodologies and fell within the range of rates identified in the Rynne Murphy survey. Meanwhile, Clark's calculations, while plausible, relied on figures in the PwC survey that failed to provide any indication as to the type of property and markets from which they were derived, beyond tersely noting that they were representative of national figures for "apartments."[FN5] In short, we find that Supreme Court's determination to credit O'Neill's capitalization rate is not based upon an erroneous theory of law, and its related determination that Clark's report was less credible based upon its reliance on certain national data is supported by the record (see Matter of Brookdale Senior Living Solutions & Meriweg Latham LLC v Town of Colonie Bd. of Assessment Review, 186 AD3d at 1805; Matter of Champlain Ctr. N. LLC v Town of Plattsburgh, 165 AD3d at 1444-1445; Matter of George A. Donaldson & Sons, Inc. v Assessor of Town of Santa Clara, 135 AD3d 1138, 1143-1144 [3d Dept 2016], lv denied 27 NY3d 906 [2016]; Onondaga Sav. Bank v Cale Dev. Co., 63 AD2d 415, 418-419 [4th Dept 1978]; see also Matter of Cohoes Falls L.P. v Board of Assessment Review, 195 AD3d at 1130; compare Matter of Board of Mgrs. of French Oaks Condominium v Town of Amherst, 23 NY3d 168, 177 [2014]).
We also find that Supreme Court's determination to forgo any consideration as to whether the properties were institutional grade was merely a component of Supreme Court's credibility determination pertaining to the methods in which the parties' experts arrived at their capitalization rates. Supreme Court was not required to make a determination as to institutional grade status as part of its overall credibility determination, and its determination that Clark's reliance on national data rendered his assessment less credible was a fair assessment of the expert evidence (see Matter of Brookdale Senior Living Solutions & Meriweg Latham LLC v Town of Colonie Bd. of Assessment Review, 186 AD3d at 1805). Further, respondents' contention that O'Neill's conclusion concerning institutional grade status renders his entire analysis unreliable is unpersuasive, as the "asserted deficiencies in [O'Neill's] appraisal and the methodology utilized[*5][in arriving at the capitalization rate] go to the weight of th[e] evidence, but do not render the proof deficient as a matter of law" (Matter of AG Props. of Kingston, LLC v Town of Ulster Assessor, 138 AD3d 1273, 1277 [3d Dept 2016], lv denied 27 NY3d 912 [2016]).
Finally, we find no merit to respondents' remaining argument that Supreme Court abused its discretion by giving equal weight to both experts' valuation of Forrest Pointe II from the sales comparison approach. For Forrest Pointe II, both O'Neill and Clark utilized various properties that were similar in character and located in various municipalities within the Capital Region. Of note, the parties utilized the same senior living apartment complex, which age restricts its tenants to persons who are 55 and older. However, the parties differed as to the significance of the age restriction, with O'Neill seeing it as a beneficial aspect due to the stability of potential tenants and Clark identifying it as a detriment based upon the limited income generally seen in that demographic. Ultimately, Supreme Court found that both experts' adjustments in their respective sales comparison approaches were credible and selected a value averaging both experts' figures. Respondents' contention presumes that Supreme Court was required to select one of the expert's conclusions on this aspect of valuation. We reject this argument, as Supreme Court had the discretion to arrive at a determination that falls "within the range of expert testimony" utilizing both experts' valuations and we find no reason to disturb its calculation on this record (Matter of Brookdale Senior Living Solutions & Meriweg Latham LLC v Town of Colonie Bd. of Assessment Review, 186 AD3d at 1804 [internal quotation marks and citations omitted]; see Matter of Goodhue Wilton Props., Inc. v Assessor of the Town of Wilton, 121 AD3d 1360, 1362-1363 [3d Dept 2014]; Matter of Al Turi Landfill, Inc. v Town of Goshen, 93 AD3d 786, 794 [2d Dept 2012], lv denied 19 NY3d 815 [2012]). Altogether, we find that Supreme Court's comprehensive determination as to the valuation of both properties is supported by the weight of the evidence and we therefore affirm (see Matter of Gran Dev., LLC v Town of Davenport Bd. of Assessors, 124 AD3d at 1047; Matter of Adirondack Mtn. Reserve v Board of Assessors of the Town of N. Hudson, 106 AD3d 1232, 1240 [3d Dept 2013]).
Lynch, J.P., Aarons, Reynolds Fitzgerald and Fisher, JJ., concur.
ORDERED that the amended judgment is affirmed, with costs.

Footnotes

Footnote 1: While this proceeding initially sought review of the 2018 tax assessment for 16 separate parcels, at the beginning of trial petitioners Empire Realty Investors I LLC, Horizon Ridge LLC and Forrest Pointe LLC discontinued the proceedings concerning their respective parcels.

Footnote 2: The East Greenbush Central School District intervened in the proceedings before Supreme Court but has not participated in this appeal.

Footnote 3: O'Neill's calculated rates under the Ellwood Mortgage Equity and Band of Investment Methodologies were 7.97% and 8.19% respectively.

Footnote 4: Supreme Court noted that Clark also included various national survey figures pertaining to a July 1, 2018 valuation date, and properly discounted those figures as irrelevant to the 2018 tax assessment at issue in this matter (see RPTL 301, 302 [1]).

Footnote 5: Conversely, the Rynne Murphy survey noted that the rates were derived from properties in upstate New York and contained rates specific to suburban apartment projects and multi-family housing.