Matter of Happy Rehab, LLC v Assessor for the Town of Glenville (2023 NY Slip Op 01562)

Matter of Happy Rehab, LLC v Assessor for the Town of Glenville

2023 NY Slip Op 01562

Decided on March 23, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 23, 2023

535449
[*1]In the Matter of Happy Rehab, LLC, Respondent,
v
The Assessor for the Town of Glenville et al., Appellants. (And Two Other Related Proceedings.)

Calendar Date:January 12, 2023

Before:Garry, P.J., Egan Jr., Lynch, Pritzker and McShan, JJ.

Roemer Wallens Gold & Mineaux LLP, Albany (Benjamin D. Heffley of counsel), for appellants.
Monaco Cooper Lamme & Carr, PLLC, Albany (Michelle A. Storm of counsel), for respondent.

Pritzker, J.
Appeal from a judgment of the Supreme Court (Thomas D. Buchanan, J.), entered December 21, 2021 in Schenectady County, which granted petitioner's applications, in three proceedings pursuant to RPTL article 7, to reduce the tax assessments for 2017, 2018 and 2019 on certain real property.
Petitioner is the owner of a parcel of land (hereinafter the subject premises) in the Town of Glenville, Schenectady County containing a 10,000-square-foot office building (hereinafter the maritime center) and a 14,550-square-foot boathouse (hereinafter the rowing center). The rowing center building is owned by a nonparty nonprofit corporation subject to a 50-year ground lease at $4,228 annually, set to expire in 2049. In late 2016, petitioner purchased the subject premises for $550,000. Petitioner subsequently commenced these proceedings pursuant to RPTL article 7 by filing verified petitions alleging that respondents' tax assessments of the subject premises for $2,360,910 in 2017, 2018 and 2019 are unequal, excessive and unlawful. The three petitions were joined by Supreme Court and tried together. As is relevant on appeal, while both parties valued the subject premises at $60 per square foot, and found the same value of the maritime center, they differed with regards to the value of the rowing center. Following a trial, Supreme Court issued an order finding petitioner's proposed value of $600,000 for 2017 through 2019 well supported by the weight of the credible evidence. Respondents appeal from the judgment issued thereon.
The issue in this case distills to a determination of the value of the rowing center; particularly the impact of the 50-year ground lease on same. As relevant here, once the presumption of validity of a municipality's tax assessment is overcome,[FN1] this Court is "tasked with weighing the entire record, including evidence of claimed deficiencies in the assessment, to determine whether petitioner[ ] established by a preponderance of the evidence that the propert[y] ha[s] been overvalued" (Matter of Empire Realty Invs. I LLC v Board of Assessment Review of the Town of E. Greenbush, 209 AD3d 1239, 1240 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]). "The goal of property valuation for tax purposes is to arrive at the full value of the property, which is typically equated with market value" (Matter of Colonie Ctr. v Town of Colonie, 209 AD3d 1214, 1215 [3d Dept 2022] [internal quotation marks and citations omitted]). "Property is assessed for tax purposes according to its condition on the taxable status date, without regard to future potentialities or possibilities and may not be assessed on the basis of some use contemplated in the future" (Matter of Hampshire Recreation, LLC v Board of Assessors, 137 AD3d 1029, 1031 [2d Dept 2016] [internal quotation marks and citations omitted], lv denied 28 NY3d 908 [2016]). "It is well settled that the best evidence of [market] value is a recent sale of the subject property between [*2]a seller under no compulsion to sell and a buyer under no compulsion to buy" (Matter of Colonie Ctr. v Town of Colonie, 209 AD3d at 1215-1216 [internal quotation marks, brackets, ellipsis and citations omitted]; see Matter of Hempstead Country Club v Board of Assessors, 112 AD3d 123, 135 [2d Dept 2013]). "Upon this Court's review, inasmuch as the valuation of property is largely a question of fact, we give deference to Supreme Court's resolution of credibility issues and will affirm its decision unless it is based on an erroneous legal determination or it appears that the court failed to appropriately weigh conflicting evidence" (Matter of Empire Realty Invs. I LLC v Board of Assessment Review of the Town of E. Greenbush, 209 AD3d at 1240 [internal quotation marks, brackets and citations omitted]).
At trial, petitioner called three witnesses, including Julie Gibbons, a commercial real estate broker, who testified as to her involvement with the listing and marketing of the subject premises, which was first listed in December 2014 for $949,000. Gibbons testified that there was not much interest despite her many efforts and that, due to a potential judgment of foreclosure against the property and because the seller wanted to generate more interest, the price was reduced in April 2015 to $549,000. Gibbons testified that the listing ended in April 2016 — after being on the market for a total of 16 months — and that there were prior offers for $350,000 and $400,000, neither of which the seller accepted. Gibbons described the rowing center as a thorn in the seller's side as it could not be utilized by a subsequent buyer due to the long lease for little money. As such, Gibbons testified that she did not market that portion of the property, but considered it part of the package that came with the maritime center. William Purtell, the assessor for the Town of Glenville, testified that, according to the real property transfer report, the subject premises was sold in October 2016 for $550,000 through an arm's-length transaction. Purtell testified that the sale was reviewed to determine whether it truly was an arm's-length transaction, which he does not consider it to be due to the impending foreclosure making it a distressed sale with likely extreme compulsion to sell.
Chris Harland, a commercial real estate appraiser, testified that he performed an appraisal of the subject premises for petitioner and prepared an accompanying report for the 2017 and 2018 tax years, as well as an updated report for 2019. Harland testified that the appraisal's purpose was to value the property in terms of what a buyer would be willing to pay for it and that his valuation was all about the market value. Harland explained that the subject premises is on well water and at the end of a dead-end road with a hairpin turn which offers limited truck maneuverability, thus making it not conducive for traditional warehousing. Moreover, there is virtually no commercial visibility or exposure [*3]as the subject premises is in an isolated neighborhood far from the main commercial thoroughfare. Harland testified that, due to it having limited heating, not being insulated and its zoning status, the only permitted use for the rowing center is as a rowing center — not as a traditional warehouse or as office space. Harland testified that petitioner does not own the rowing center building and that the existing 50-year ground lease had a very significant impact on his valuation because the annual rent is nominal and petitioner cannot use or lease the building.[FN2] Harland explained that he does not believe the rowing center is valueless and accounted for this in his valuation. For example, when utilizing the comparable sales approach, Harland made adjustments to the five comparable sales, adding 5% to each, in his report. The small adjustment was based upon the rowing center currently offering only a small income stream and impeding petitioner's use of the river for the foreseeable future. Harland testified that the stated market value, after reviewing the comparable sales and making the necessary adjustments, for the three years under review is $600,000;[FN3] this amount equals $60 per square foot, applied to the 10,000-square-foot maritime center. He did not include the rowing center square footage due to petitioner's inability to use that portion of the facility for an extended period of time. As to the nature of the sale, Harland explained that he considers the sale for $550,000 to be an arm's-length transaction between unrelated parties given that the property had adequate exposure time to the market by the time the sale occurred. Harland also testified he was aware that a judgment of foreclosure was entered for the subject premises but that the seller did not behave as if he was under a compulsion to act as he marketed the property professionally and continuously for over a year.
Respondents, for their part, called Zackary Smith, a senior review appraiser, who testified about an appraisal report prepared for respondents by James M. O'Neill.[FN4] Ultimately, Smith testified that O'Neill's report was credible and valued the subject premises at $60 per square foot, the same valuation as Harland, as applied to the total 22,616 square feet, for a total value of $1,360,000. Smith's testimony demonstrates that, although he agrees with many of Harland's conclusions, the valuation of the rowing center primarily accounts for the discrepancy between O'Neill's and Harland's valuations. In particular, Smith testified that O'Neill valued the property in fee simple, which involved valuing the rowing center and the land, whereas Harland valued the leased fee and did not consider the unencumbered portion of the rowing center. Smith testified that for tax certification purposes, the land and the buildings must be valued — meaning appraising for tax purposes should be evaluated as fee simple, not leased fee. Smith also disagreed with Harland and testified that he considers [*4]the sale of the subject premises to be a sale made in distress, and thus not a reliable indicator of value, due to the foreclosure proceeding.
Supreme Court ultimately adopted Harland's report and reasoning, a determination with which we agree. The court found that the arm's-length sale of the property for $550,000 is the best indicator of value. Although the court considered respondents' assertion that the sale of the subject premises was made under duress due to the foreclosure proceeding, it ultimately disagreed given the total length of time, over 600 days, that the property was actively marketed and the prior owner having rejected two previous offers. In crediting Harland's report and valuation of $600,000, the court pointed out that Harland did not rely solely on the purchase price; rather, he considered, among other things, the sale price along with various comparable properties and made appropriate adjustments. The court also credited Harland's testimony that the restrictive zoning of the subject premises is a "critical issue in terms of identifying useful and reliable sales comparison properties." This testimony was consistent with Gibbons' testimony and was not refuted by respondents. The court also noted that, not only did O'Neill fail to consider the lease on the rowing center, he also used comparable sales described as "light industrial," despite this not being an allowed use for the subject premises and the physical characteristics not lending themselves to such a use.
Although respondents argue that petitioner is rendering the rowing center completely tax exempt, such characterization is false as Harland attributed value to the rowing center. Indeed, the rowing center with its zoning limitations, the lengthy lease and the conditions of the building was properly found by Harland to lack significant value beyond a 5% adjustment. Similarly, while respondents contend that the lease of the rowing center cannot be used to depress the taxable value of the subject premises, petitioner is not using the lease to depress the value of the rowing center — or even as a basis for calculating actual value as respondents attempt to argue — but is instead analyzing how the lease affects the market value of the subject premises — which is the goal in a tax assessment valuation (see Matter of Colonie Ctr. v Town of Colonie, 209 AD3d at 1215). Here, the lease, which generates a very small amount annually and does not lapse for many more years, affects the market value of the subject premises in a negative manner and was appropriately considered by Harland as one of a myriad of factors in his valuation. Therefore, based on the foregoing, and deferring to Supreme Court's credibility determinations, we find that the court's determination is supported by the weight of the evidence (see Matter of Empire Realty Invs. I LLC v Board of Assessment Review of the Town of E. Greenbush, 209 AD3d at 1245; Matter of Rite Aid Corp. v City of Troy Bd. of Assessment [*5]Review, 155 AD3d 1172, 1174 [3d Dept 2017]; Matter of Center Albany Assoc. LP v Board of Assessment Review of the City of Troy, 151 AD3d 1420, 1425 [3d Dept 2017]).
Garry, P.J., Egan Jr., Lynch and McShan, JJ., concur.
ORDERED that the judgment is affirmed, with costs.

Footnotes

Footnote 1: Respondents do not dispute that petitioner has overcome this presumption.

Footnote 2: Harland explained that comparable leases are usually three to five years, therefore the longer lease on the rowing center is unique and is an encumbrance.

Footnote 3: Harland reached this same valuation utilizing the income capitalization approach.

Footnote 4: O'Neill passed away prior to trial and the parties stipulated to Smith testifying about O'Neill's valuation.